SMITH *against* BRUSH.

A surrogate's court in the state of *New-York*, is not authorized, by the laws of that state, on the application of a creditor of a deceased person, whose estate is in a course of settlement before that court, to settle and determine such creditor's claim upon the estate.

Therefore, where *A*, an inhabitant of the state of *New-York*, died there, and *B* was appointed, by the proper surrogate's court of that state, administrator on *A's* estate; in *April*, 1831, *B*, as administrator, brought, in this state, an action of account against *C*, on a claim in favour of *A's* estate ; in *October*, 1831, during the pendency of this suit, *C* applied to the surrogate for a settlement of *B's* administration account, claiming to be a creditor on the same account, which was the subject of said suit ; in *February*, 1832, the surrogate, having cited the parties before him, who appeared and

*Fairfield,*
*June,* 1834.

Smith
*v.*
Brush.

were fully heard, found a balance due to *C,* and decreed payment by *B* out of the funds in his hands ; these matters being pleaded, by *C,* in bar of said suit, supported by an exemplification of the record in the surrogate's court and of the statutes of *New-York,* it was held, that the plaintiff's rights were not thereby settled and determined ; and consequently, the plaintiff was entitled to a verdict and judgment in his favour.

THIS was an action of account, brought by the plaintiff, as administrator of *Samuel Peck,* deceased, against the defendant, as bailiff and receiver of said *Peck* from the 1st of *April,* 1827, to the 10th of *March,* 1829 ; alleging, that, during that period, said *Peck* occupied a farm of land in *North-Castle,* in the state of *New-York,* under a lease from the defendant, on certain terms, and that the defendant furnished less than his share of the seeds and received more than his share of the produce.    The suit was commenced in *April,* 1831.

The defendant pleaded in bar, that said *Samuel Peck,* during his life and at his death, was a citizen of the state of *New-York,* and an inhabitant of the town of *North-Castle* in *Westchester* county ; that *Joshua Smith,* the plaintiff, applied to the surrogate of that county, to whom, by the laws of the state of *New-York,* appertained the probate of last wills and testaments, the granting of administration and the settlement of the estates of deceased persons, and obtained from him letters of administration on said *Peck's* estate ; that by virtue thereof, the plaintiff ever since has been, and still is, administrator on said estate ; that said surrogate, by the laws of the state of *New-York,* had full judicial power and authority to settle and adjust said administrator's account, and thereby to bind and conclude said administrator and all persons having any interest in such account, or any claim upon said estate ; that on the 12th of *October,* 1831, the plaintiff, then residing in said county of *Westchester,* on the application of the defendant, claiming to be a creditor of said estate, on the same account in the declaration mentioned, rendered to said surrogate his account of his administration of said estate, and, at the same time, desired to have it finally settled ; that after a citation to all persons interested, the plaintiff, in his account so rendered, presented to said surrogate for adjudication and final settlement all the matters and demands in the declaration mentioned ; that the plaintiff claimed, that a large balance, *viz.* the sum of 71 dollars, 67 cents, was due

from the defendant to him, as administrator ; that the defendant appeared before said surrogate, on the 15th of *February*, 1832, when, (the parties having been fully heard,) it was found, by said surrogate, that there was due to the defendant, on the matters and account in controversy, (being the same mentioned in the plaintiff's declaration,) the sum of 132 dollars, 21 cents ; which sum, after deducting the costs and charges of the surrogate, it was decreed that the plaintiff should pay to the defendant within twenty days.

The principal matters alleged in the plea were traversed by the plaintiff ; on which issue was joined.

The cause was tried, on this issue, at *Fairfield*, *December* term, 1833, before *Williams*, J.

It was admitted, that the defendant had always resided at *Greenwich*, in this state. The evidence introduced, consisted of an exemplification of the files and records of the surrogate's court for the county of *Westchester*, in the state of *New-York*, and certain statutes of that state, published in volume 2. from page 56 to 133., from page 220 to 224., and from page 604 to 611. (all inclusive) of the edition of the statutes of that state, printed at *Albany*, in 1829, and in the 1st volume of the edition of 1813, the 8th section of the 10th chapter, on page 134. and the 79th chapter, commencing on page 444. The former document set forth at large the proceedings and decree mentioned in the plea. The statutes referred to, it is not necessary to recite, in this place. On this evidence, the defendant prayed the court to charge the jury to find a verdict in his favour. The court did not so charge the jury, but directed them to return a verdict for the plaintiff ; which was accordingly done. The defendant thereupon moved for a new trial, for a misdirection.

*Sherman*, in support of the motion, contended, 1. That assuming the power and jurisdiction of the surrogate's court, it appeared from the files and record of that court, that the surrogate did *in fact* settle the claim now in controversy.

2. That by the laws of the state of *New-York*, he was fully authorized to do this.

3. That the proceedings had and the decree made were in exact conformity to the provisions of those laws.

*Fairfield,*
*June, 1834.*

Smith
*v.*
Brush.

4. That such proceedings and decree were conclusive upon the parties in this suit.

*Betts* and *Hawley,* contra.

WILLIAMS, J.   This is an action of account, by an administrator of a person who resided in the state of *New-York,* who himself resides there, and derives his authority from the laws of *New-York,* against the defendant, as bailiff and receiver ; to which the defendant pleaded a settlement of the account, made since the suit in the surrogate's office in that state, and by his authority ; which, the defendant claims, forms a bar to this suit.

It is not pretended by these pleadings, that this plaintiff has done any thing, by which he has voluntarily settled and adjusted the claims ; but that the proceedings in the surrogate's office were such as by the laws of the state of *New-York* settled and determined the plaintiff's rights.   The superior court was of opinion, that the laws of *New-York* did not justify this inference, and directed a verdict for the plaintiff.   To reverse that opinion, is the object of the motion.

That the ecclesiastical courts in *Great-Britain,* or the probate courts in *Connecticut,* have the power to call in the creditors of the deceased and adjust their claims, (except in our own state, where the estate is insolvent,) cannot be pretended.   But the defendant's claim is, that in the state of *New-York,* this power is given to their courts of probate, and that this case being within that jurisdiction, our courts are thus ousted of jurisdiction ; and the question is, whether the laws of *New-York* do confer this power upon the surrogate.   This must be shown by the defendant, before our courts can relinquish the cognizance of a case legally before them.

By these laws, before the revolution, the Governor, or such persons as he, delegated, had the jurisdiction in cases of this kind.   On the 16th of *March,* 1778, courts of probate were constituted, with powers similar to those now given to surrogates, in the 1st section of the revised act.   *Stat.* of 1813. *p.* 434. note.

The existing acts, under which it is claimed these powers are granted, are the following :

" Whenever an account shall be rendered and finally settled

under any of the preceding sections, except the 68th and 69th, if it shall appear to the surrogate that any part of the estate remains to be paid or distributed, he shall make a decree for the payment and distribution of what shall so remain, to and among the creditors, legatees, widow and next of kin to the deceased, according to their respective rights; and in such decree shall settle and determine all questions concerning any debt, claim, legacy, bequest, or distributive share; to whom the same shall be payable; and the sums to be paid to each person." 2 *Rev. Stat.* 95. *sect.* 71.

And in the powers given to surrogates, we find the following. They are " to enforce the payment of debts and legacies, and the distribution of the estates of intestates." 2 *Rev. Stat.* 220. *sect.* 1.

And " an executor or administrator, after the expiration of eighteen months from the time of his appointment, may be required to render an account of his proceedings, by an order of the surrogate, to be granted, on an application from some person having a demand against the personal estate of the deceased, either as creditor, legatee, or next of kin; or of some person in behalf of any minor, having such claim; or without such application." 2 *Rev. Stat.* 92. *s.* 52.

" If upon being required, by any surrogate, to render an account, an executor or administrator desires to have the same finally settled, he may apply to the surrogate for a citation, which such surrogate shall issue, requiring the creditors and next of kin of the deceased, and the legatee, if there be any, to appear before him, on some day therein to be specified, and to attend the settlement of such account." 2 *Rev. Stat.* 93. *sect.* 60.

The statute also prescribes, that " the final settlement of such account, (administrator's or executor's) and the allowance thereof, by the surrogate, or upon appeal, shall be deemed conclusive evidence against all creditors, legatees, next of kin of the deceased, and all persons in any way interested in the estate, upon whom the said citation shall have been served, either personally or by publication, as herein directed, of the following facts, and of no others:

" 1. That the charges made in such account for moneys paid to creditors, to legatees, to the next of kin and for necessary expenses, are correct:

*Fairfield,*
June, 1834.

Smith
*v.*
Brush.

"2. That such executor or administrator has been charged all the interest for moneys received by him, and embraced in his account, for which he is legally accountable:

"3. That the moneys stated in such account, as collected, were all that were collectible on the debts stated in such account, at the time of the settlement thereof:

"4. That the allowances in such account, for the decrease in the value of any assets, and the charges therein for the increase in such value, were correctly made." 2 *Rev. Stat.* 94. *sect.* 65.

The plaintiff referred to the 36th and 38th sections of the same statute, by the former of which the power of referring disputed claims, is conferred, and by the latter, provision is made, by which, if the executor rejects a claim, suit must be brought in six months, or it shall be barred. 2 *Rev. Stat.* 88, 9.

The first section of the statute under the title "Of surrogates' courts," gives, expressly, certain powers to surrogates, at the close of which is this provision: "Which powers shall be exercised in the cases, and in the manner, prescribed by the statutes of this state, and in no other; and no surrogate shall, under pretext of incidental power or constructive authority, exercise any jurisdiction whatever, not expressly given by some statute of this state." 2 *Rev. Stat.* 220, 1.

These are all the enactments of the state of *New-York*, which have been shown to bear, with much force, upon this question.

When the defence is to take away the jurisdiction of our courts, on a claim confessedly within their jurisdiction, at its commencement, in a manner unknown to the common law, by interposing the act of the tribunal of another state, it is the duty of this court to be well satisfied with that authority. And when it is found, that no judicial opinion of the courts of that state is brought in aid of such a claim, but that it depends merely upon written statute law, we are bound to see that this written law confers this power.

It seems to be conceded, that the ancient laws of *New-York* conferred no such power. If a new power of this important character, so entirely contrary to the common law practice, and that which had always existed in the state of *New-York*, was about to be introduced, by the revisors of that code, it is impossible to believe, that it would have been done in such an

equivocal manner as to leave it doubtful what was designed; especially, when they restricted the authority, as they have done : " That no surrogate shall, under any pretext of incidental power or constructive authority, exercise any jurisdiction whatever, not expressly given, by some statute of this state :" and when it also takes away the right of trial by jury.

In view of these circumstances, the courts of another state are bound to see clearly, that such authority is given *expressly*, by these statutes, and not, by their construction, give those incidental powers, which are guarded against with so much caution.

Where, then, is the statute which gives this power ? The 52d section authorizes, after eighteen months have expired, the calling of the executor to account. The 60th section provides a way, in which, when called to account, he may bring in those interested in such a manner that they may be concluded. This is incident to the duty ; it could never be done without some such authority. It is conversant only about the account of the executor or administrator ; but creditors and legatees having an interest in such settlement, may be called in, as well as the heirs ; still the subject is *his* account, not theirs. The statute goes on to prescribe in what cases the final settlement will be conclusive ; and specifies each of them. They relate entirely to the account of the executor or administrator ; and no allusion is made to that of a creditor. *Sect.* 65.

The 71st section is principally relied on; by which this court, before it orders distribution, shall, in its decree, "settle and determine all questions concerning any *debt, claim,* legacy, bequest or distributive share ; to whom the same shall be payable, and the sum to be paid to each person."

By the 11th section of the former statute, it is enacted, that the surrogate "shall hear and determine all causes touching any legacy," &c. *Vol.* 1. *p.* 448. *ed.* 1813. As by this statute he is to determine as to debts, claims, &c., it is supposed, he must have the authority to settle all such claims conclusively; and that some new power was intended to be conferred. The article in which this section is found, is entitled " Of the duties of executors and administrators in rendering an account, and in making distribution to the next of kin." The intent is, by calling the executor to account, to prepare for the distribution. To do this, the surrogate must ascertain what there is to pay

with, and who are to be paid. This power is implied in the authority to make the distribution ; because the court cannot direct what to distribute, unless it can ascertain what is left for distribution ; and that cannot be known, until the debts are known. An inquiry as to the debts, then, must be made. Our own law speaks repeatedly of debts and charges allowed by the court of probate. Before they are allowed, their amount must be ascertained. But it was never supposed, that this was conclusive on the creditor. So in the former statute of *New-York,* before cited, (section 11th) the court are to make distribution " of what remaineth clear, after debts, funeral charges, &c. first allowed and deducted," according to law. No case is shown, nor is it pretended, that under that act the non-allowance of a debt in settling the administration account, would be conclusive on a court of law ; and yet this court is to allow or disallow it.

It is said, the present statute enlarges the authority. " This court shall settle and determine all questions concerning any claim, legacy, &c., to whom it shall be payable." Still the question recurs, what is to be the effect of the settlement upon this creditor and his rights ? That it will justify the executor or administrator in paying over the money under the decree, may be true ; but it does not follow, that it will conclude every creditor, whose debt the executor or administrator chooses to bring to this test. It is to be confined to the subject matter. For that purpose, it is to be settled and determined. To say that it is to be for any other purpose, is to say that the allowance of the account is to have an effect certainly not given to it in either of the specifications above recited, which have been made on that subject ; and is, therefore, conferring a jurisdiction not expressly given by some statute of the state. It also withdraws from the ordinary jurisdictions a considerable class of cases, and transfers them for trial before a forum where there is no jury.

It is said, indeed, that this is to apply only to cases remaining unsettled after eighteen months have elapsed. But suppose a creditor has been diligently pursuing his claim in a court of law or chancery, and at the end of eighteen months, after all the delay that could be interposed, is about to bring it to a decision ; could it ever have been intended, that these proceedings were to be terminated, and the jurisdiction taken away, by the

executor or administrator applying to the surrogate to settle his account, and citing in the creditors? Such must be the effect of the claim of the defendant.

*Fairfield,*
*June, 1834.*
Smith
*v.*
Brush.

It was said, that an appeal lies from the surrogate's decree to the chancellor; and it is asked, will not this court aid in enforcing such decree? Certainly, so far as the law makes such decree conclusive, and no further. But the decree of the chancellor, though his opinion may be entitled to more respect, is no more binding than that of the surrogate. The question, in either case, is, what is the effect the law intends shall be given to such decree?

The case of *Seymour* v. *Seymour,* 4 *Johns. Ch. Rep.* 409. cited by the defendant, only goes to prove, what the case of *Beach* v. *Norton* &. al. 9 *Conn. Rep.* 182. in our own state, proves, that the court of chancery would not interfere with the ordinary power of the surrogate.

It is to be regretted, that this court should be called upon to settle the construction of a statute of another state, without any light from the judicial opinions of that state. Until such an opinion is given, I must believe, that this defence cannot be supported, by any provision of the revised statutes of the state of *New-York ;* and therefore, would refuse a new trial.

The other Judges were of the same opinion, except PETERS, J., who was absent.

New trial not to be granted.