## SMITH *against* BRUSH.

Where the auditors in an action of account, brought, in *April*, 1831, by *B*, as the administrator of *A*, against *C*, for an adjustment of his account during the time that he and *A* were jointly concerned in the occupation of a farm, reported a balance in favour of *B*, including one half of a sum paid by *B* to *C* from their joint property, pursuant to a decree made by a surrogate's court in the state of *New-York*, in *February*, 1832, which was extra-judicial and void; it was held, on a remonstrance to the acceptance of the report, that the sum so allowed was not exceptionable, because it accrued after the commencement of the suit; or because it was paid under a void decree; or on the ground, that *B* had then no partnership funds in his hands.

On the trial before the auditors, in such action, *C* offered in evidence a due-bill given by *A* to *C*, for what *A* had received over his proportion of the avails of the farm, and a promissory note given by *A* to *C*, for stock put on the farm by *C* over his proportion: Held, that the sums specified in these instruments ought to be allowed, in *C's* favour, as items in the partnership account.

Where the auditors in an action of account rejected certain distinct claims of the defendant, and reported a balance in favour of the plaintiff; and on a remonstrance to the report, the court decided, that such claims ought to be allowed; it was held, that the plaintiff might enter a *remittitur* of the amount erroneously rejected, and have the report established for the residue.

THIS was an action of account. For an abstract of the declaration and pleadings, see 10 *Conn. Rep.* 168, 9. A new trial having been refused, by the advice of this court, in 1834, auditors were subsequently appointed, by the superior court, who made their report in favour of the plaintiff, for 98 dollars, 32 cents. To the acceptance of this report the defendant remon-

*Fairfield,*
June, 1836.

Smith
*v.*
Brush.

strated, on the following grounds: 1. That when the cause was on trial before the auditors, the plaintiff offered evidence to prove, that after the commencement of the suit, *viz.* on the 15th of *February*, 1832, he paid, in pursuance of a decree of the surrogate of *Westchester* county, in the state of *New-York*, into his office, the sum of 84 dollars, 50 cents, which was found by him to be due from the estate of *Samuel Peck*, deceased, to the defendant; and that the defendant took this sum from the surrogate's office, and applied it to his own use. To the admission of this evidence, the defendant objected, on the ground that this sum came into his hands long after the commencement of the suit; that it was paid by the plaintiff, and received by the defendant, under a decree of the surrogate, as set forth in the defendant's plea, before the auditors were appointed, each of the parties verily believing such decree to be valid; and that the defendant, therefore, could not be holden to account for such sum in this action. The auditors over-ruled this objection and admitted the evidence, and charged said sum to the defendant, in making up their award.

2. That the defendant gave in evidence a due-bill for 11 dollars, 79 cents, dated the 7th of *February*, 1829, signed by said *Samuel Peck*, and payable to the defendant, which was agreed before the auditors to have been given, by said *Peck*, to the defendant, for what said *Peck* had received over and above his proportion of the avails of the farm for the year 1827: that the defendant also gave in evidence a promissory note, made by said *Peck*, for 34 dollars, 43 cents, dated the 6th of *February*, 1829, payable to the defendant one year after date, which was also agreed to have been given, by said *Peck*, to the defendant, for stock put on the farm by the defendant, over and above his proportion. This due-bill and this note being unpaid, the defendant claimed that they should be allowed and passed to his credit, in stating his account with the plaintiff; but the auditors refused to allow them, or either of them.

These allegations being denied, by the plaintiff, in his replication, the court found them true, except that the plaintiff did not believe the decree of the surrogate to be valid; and that the auditors did not charge the whole of said sum of 84 dollars, 50 cents, to the defendant; but they did, in making up the account, charge him with the half thereof, and that only; and said sum of 84 dollars, 50 cents, was paid by the plaintiff out

of the joint property of the plaintiff, as administrator, and of the defendant.

The case was reserved for the advice of this court.

*Sherman* and *Minor*, for the defendant, contended, 1. That the sum of 84 dollars, 50 cents, was improperly allowed to the plaintiff, and charged against the defendant. First, because the money was paid after the commencement of the suit; and the defendant is liable to account, in this action, for such sums only as he then had in his hands; otherwise, the plaintiff, by advancing money, during the pendency of the suit, might change the balance and throw the costs on the defendant. Secondly, because this sum was not a partnership debt, there being no partnership funds in the plaintiff's hands at that time. Thirdly, because the money was paid in compliance with an order of a court that had no jurisdiction; and if the plaintiff has any claim, it is founded *in tort.* For such a claim account will not lie. Agreement is the foundation of this action. It does not lie where there is a want of privity; nor for a direct wrong. *Com. Dig. tit.* Accompt. D. 1, 2.

2. That the due-bill and note given by *Peck*, for the balance due to the defendant, on their joint concern, in the year 1827, ought to have been allowed. If these instruments had not been given, there can be no question but that this ascertained balance for that year, must have been brought into the account. Have this note and due-bill varied the condition of the parties in this respect? A due-bill is a mere acknowledgment in writing, that so much is due. A note is such an acknowledgment, accompanied with a promise to pay. Neither of them, especially while in the hands of the original parties, will merge the claim or affect the account.

*Hawley* and *Betts*, contra, insisted, 1. That the sum of 84 dollars, 50 cents, having been paid under a void decree, and being joint property, paid and received as such, was properly taken into account, as if no such decree had been made. It was not distinguishable from any other property received by one partner. If this were not allowed, the plaintiff would be remediless; for as this was joint property, and the accounts unsettled, *assumpsit* would not have lain. A complete settle-

ment of the accounts could not be had, without including this money.

It makes no difference that the money was paid after suit brought. The object of the action is, to get an adjustment of all accounts. This each party is entitled to; and every transaction, not merely up to the commencement of the action, but up to the account taken, must be considered. Neither party can have a second action of account.

2. That the due-bill and note were properly rejected. The due-bill was given on a settlement of all accounts for 1827. That year was fully accounted for; and " fully accounted" might have been pleaded. The defendant could not have sued *Peck*, as a partner, in account, on this due-bill; but must have sued him as an individual debtor, in *assumpsit ;* and *Peck* could not have set off any claim he had against the defendant as a partner. The note formed no part of the joint accounts. *Peck* was indebted for this, not as a partner, but as an individual, and was liable in *assumpsit* only. It was, in effect, so much borrowed of the defendant, by *Peck*, to enable him to furnish his outfit.

The court, after a short consultation, intimated an opinion, that the due-bill and note ought to have been allowed to the defendant, in his account ; and proposed to the counsel for discussion the question, in what way the error should be corrected.

*Betts*, for the plaintiff, proposed to release so much of the sum found due by the auditors, as is equal to the due-bill and note by them rejected ; and prayed the court to establish the report for the residue.

*Sherman*, for the defendant, contended, that this could not be done, but that the report should be set aside, and a new hearing be had before the auditors. There is no precedent of a release or *remittitur* of the damages, by a plaintiff, when found by the triers of a fact, except where it appears, by the *pre-existing* record, that the sum found exceeds the sum demanded, so that its allowance by the court, would be error. The only case in which this happens, at all analogous to the present, is, where more damages are given than are claimed in the declaration. 2 *Arch. Prac.* 221. In every such case,

the abatement of the damages is not considered as a discharge from the plaintiff to the defendant, but merely as a matter of form, to make the record speak a language, explicitly, which is conformable to its true construction, if no *remittitur* were entered. On this ground " it is the duty of the clerk at *Nisi Prius*, if the jury, by mistake, find a verdict for greater damages, to enter it, by the amount laid in the declaration merely." 1 *Arch. Prac.* 197. Consequently, the *remittitur* cannot be received by the court, as a release of any right, which the plaintiff would have without it, but a mere correction, in point of form, which the clerk might have made, as well as he. If the clerk at *Nisi Prius* commits the same error with that of the jury, and by mistake enters a verdict for more than the sum named in the declaration, when he ought to have entered it for that sum only ; then, and then only, does the *remittitur* become necessary, in order to restore the entries to their proper form.

*Fairfield,*
June, 1836.

Smith
*v.*
Brush.

In this case, there is no such exigency. The report does not exceed the demand, or contradict any part of the pre-existing record. Had it been entered and ratified, without remonstrance, there would be no error or inconsistency. The error in the report, when committed, was an error because contrary to law ; not because it contradicted any record, or exceeded the sum which the plaintiff had, in due form, demanded. The absence in this case of the only grounds on which a *remittitur* has been received, in any other, shews, that no principle or precedent can authorize it. The error in law committed by the auditors, may be released, by the defendant ; but cannot be discharged, by the plaintiff.

The release, if given, will not *pay* or *discharge* the due-bill and note rejected by the auditors : they may still be collected, by the defendant. They are not even before the court. We complain of their rejection, but do not present the due-bill or note for adjudication or allowance. The court below can have no jurisdiction over them. The release *in invitum* will not pay them, but be a mere gratuity.

But the court below will have no power to revise or alter the report, even with the assent of the plaintiff. In the 2nd section of the statute on which this suit is founded, it is enacted as follows : " And on the return and acceptance of the report, the court *shall* render judgment, that the party in whose favour

*Fairfield,*
*June, 1836.*

Smith
*v.*
Brush.

it is made, shall recover *the sum* found to be due."    *Stat.* 33. The court have no power but either to reject or accept the report; not to reject part, and accept the residue.    The auditors have the sole prerogative of deciding the amount; and to revise and rectify their proceedings, would be to encroach on their province, against the inhibitions of the act.    The *"auditors* shall liquidate and adjust the accounts, and award that the party in whose favour they shall find *the balance* to be due, shall recover *the same,* and shall make report," &c.    *Stat.* 33. But the proposal now is, that the court, instead of accepting "the report," shall accept part of it; instead of adopting " the balance" reported, shall find another balance; and instead of rendering judgment for " the sum found to be due," shall render judgment for another sum.

Upon a petition for new trial, which is addressed to the discretion of the court, it is competent to prescribe terms, with which the parties must comply, or the new trial be denied. But in a proceeding at law to correct an *error in law,* which has been committed, by auditors, or a jury, or an inferior court, it is altogether unprecedented to prescribe terms, on which the error shall be compounded.    Such a proceeding would be as legal on a writ of error, as in a case like this; and should it pervade our jurisprudence, the reign of the law would cease, and " the chancellor's foot" would become the measure of justice.

*Betts,* in reply, insisted, that this case was not distinguishable in principle from a *remittitur* on a verdict of the jury.    The auditors have allowed more than the plaintiff now claims; and he relinquishes the excess upon the record.    The entire proceeding is thus spread upon the record, which furnishes the rule of reforming the award.    There is no possibility of doing injustice, by the course proposed.    This court say the award is right, with the exception of the due-bill and note.    These are to be rejected, and these only.    The plaintiff offers to deduct them, at once, from the amount awarded to him.    What has the defendant to complain of?

WILLIAMS, Ch. J.    It is claimed, that the sum of 84 dollars, 50 cents, was paid, by the plaintiff, under an order of a surrogate's court in the state of *New-York ;* the effect of which was examined in a former trial of this cause between these par-

ties.  10 *Conn. Rep.* 167.  And the defendant now objects to this allowance to the plaintiff, because it was not a partnership debt ; because it accrued since the commencement of this suit ; and because it was paid by compulsion, as much so, as if taken by force ; and the defendant cannot, therefore, be considered as receiver of this sum : there was no privity between them.

The defendant obtained this money of the plaintiff under a pretended decree of the surrogate ; and obtained it, as has been decided, without law ; but he ought not, under such circumstances, to be permitted to say, by way of defence, that it was wrongfully obtained, without the consent of the plaintiff ; and therefore, that the plaintiff shall not recover it, in this suit.

He says further, that this money, thus paid by the plaintiff, was not partnership money ; because it is now ascertained, that there were no partnership funds in his hands.   There might have been in the plaintiff's hands the avails of the joint funds, and this money may have been these avails, although upon a final settlement, nothing was due to the defendant.   But however that may be, this sum of 84 dollars, 50 cents, was demanded, by the defendant, in his claim before the surrogate, as the avails of the joint property ; as such, it was, by the surrogate, awarded to him ; and as such, it was, (though reluctantly,) paid, by the plaintiff, to the defendant ; as such only, could the defendant have received it.   He ought not, then, now, to be permitted to say, that in the settlement of this joint concern, he did not receive it as from the joint funds, and ought not to account for it in a final settlement of these concerns.   And in addition to this, the auditors allowed only half of that sum, treating it, therefore, as joint property.

Another objection which the defendant makes to this allowance, is, that it was paid since suit commenced ; and the rights of the parties ought not to depend upon, or be varied by, facts, which have arisen since action brought.   The great object of the action of account, is, to obtain a settlement of the mutual accounts of the parties ; and a final settlement cannot be effected, unless such allowances are made.   One of the parties may know of debts, which are due, and which ought to be paid, and which he may be compelled to pay during the progress of a suit.   From the nature of the connexion, it seems as if these payments ought to be allowed upon the settlement of the accounts, as much as payment on a note, which had been made

by the party himself. There is an obligation upon every partner or joint debtor to pay the debts of the concern ; and if he does it, he must owe the concern so much less.

But we do not rely upon general reasoning only. There is high authority in support of such an allowance. Lord *Mansfield* says : " In a writ of account, the first judgment is *quod computet ;* and on such account, all articles of account, *though incurred since the writ,* shall be included, and the whole brought down to the time when the auditors make an end of their account." *Robinson* v. *Bland,* 2 *Burr.* 1086. The claim of the 84 dollars, 50 cents, was, therefore, properly allowed.

As to the due-bill and the note. By the facts, as found upon the remonstrance, they seem to stand upon the same grounds. Both were given, by *Peck,* for advances made by the defendant towards the joint concerns, over and above his proportion ; and there seems to be no good reason why they should not go into the general account, unless the fact that a due-bill and note were given, should prevent it. Now, if upon an annual settlement, rests had been made in the account, and a balance brought forward, it could not be successfully claimed, that this would prevent that balance from going into the next year's account, if it remained unpaid. Now, a due-bill, coupled with evidence that it was given upon such a settlement, is nothing more. It does not any more contain a promise to pay, nor does it merge the account : it only shews that the balance was then adjusted, but not paid. No reason, then, exists, unless that the instrument might remain outstanding, why this sum should not be allowed as an item in the partnership account. Its character is not changed. The moment it is shewn to be a part of that transaction, that moment, the party shews a right to have it take its place in the partnership account. Though the instrument may remain outstanding, yet as it is not negotiable, payment can always be shewn, by an allowance in and payment of the account. And indeed, the auditors, in such cases, may, with propriety, enter such allowance upon the instrument, and thus prevent any ill consequences which might arise therefrom. This item, therefore, ought to have been allowed, by the auditors. And although the note contains an express promise to pay, still, since such notes are no longer treated as specialties, the mere fact that a note was given, will not be such

evidence of payment as to prevent the allowance. It is a mere security for the debt; but it still remained a debt, arising out of the partnership concerns; and there seems to be no good reason why such a debt should not be included in the final adjustment of the joint concerns.

It is said, that as a suit must have been brought upon the note, in the same manner as if it had been given upon any other consideration; therefore, it cannot be allowed. It is true, that a suit would be so brought upon the note; but in this account, the claim does not rest upon the note alone, but only as connected with the partnership concerns. It is not the note which is allowed, but the debt for which it was given, arising out of the joint concern. Another construction would make the giving of a note a cash payment. In *Preston* v. *Strutton* & al., exrs., 1 *Anstr.* 50. where a bill was filed for relief against a promissory note, given upon the settlement of a partnership account, the partnership still continuing, the court said, that when the account is once liquidated and a note given, the note must be paid, *unless a second account has been taken, and the balance found the other way.* Here, a second account has been taken, and the balance found the other way. The court, therefore, are of opinion, that these items ought to have been allowed, by the auditors.

Another question now arises, what effect is this mistake of the auditors to have upon the award? Is it to open the whole account; and are the parties to be permitted to re-examine all the items? Or is this an error, which may be corrected? This action is so seldom resorted to, in *England,* that very little light is to be derived from the books upon this subject; and if no technical rule forbids, it must be settled upon such principles as will best promote justice between the contending parties. As no authority has been found upon this subject, it is proper to inquire, whether our statute interposes any difficulty. It requires, that the auditors shall liquidate and adjust the accounts, and award that the party in whose favour they find the balance to be due, shall recover the same, and shall make report, &c., and on the return and acceptance of the report, the court shall render judgment, that the party in whose favour it is made, shall recover the sum found due, with his lawful costs. *Stat.* 33. *tit.* 1. *s.* 2.

It will not be claimed, that the party in whose favour the award is, shall recover the balance found due *at all events;* for that would make it imperative on the court to accept the re-

port; and the remonstrance must, therefore, be adjudged insufficient. But as the court are to render judgment on the return and *acceptance* of the report, it is manifest, that the court may accept or reject the report, as the case requires. Accordingly, the uniform practice has been, for the court to hear any objections to the report, and accept or reject it, as it was or was not founded upon legal principles. If, then, the court are to act upon this report, they must examine and act upon each part of it—upon every item upon which it is founded—provided there are questions of law arising upon them. It would seem to follow, that if the court were bound to examine each particular item, they might reject one or more of these items, when they were so distinct that this could be done, without interfering with other parts of the account. And if they can thus modify the report, and are not bound to adopt every part of it, it would seem to follow, that they may, under other circumstances, compel the party in whose favour a mistake is, which they cannot correct, so to modify it, that justice may be done to the party aggrieved. A report of auditors can be of no higher nature than a verdict of a jury; and no reason occurs, why the court should not exercise a general superintendence over the one, as well as over the other, to prevent the effects of mistakes. In cases of a mistaken verdict, where the plaintiff will consent to waive an advantage which he has thus acquired, the court will not, of course, set aside the verdict, and compel the parties to commence anew. And nothing is found in the statute, or in the principles of the common law, which forbids the application of a similar rule, in case of the report of auditors, if justice requires it.

How then, stands this case? After a long protracted litigation, the parties have been heard before the tribunal constituted for such a case. After a full investigation of the subject, that board have found a sum due to the plaintiff. The defendant has made his objections to this report; which have been examined by this court, who find a mistake to have intervened in two small items of the account. Shall the whole proceedings of the auditors be therefore set aside, and this contest be renewed? Shall the parties be permitted again to litigate questions, which have been settled, in such a manner, that no objections have been made to them? Or shall such a course be taken as will correct a trivial error, so that justice shall be done to both

parties? If the mistakes of which the defendant complains, can be corrected, without opening the whole case, the defendant cannot complain; for his objections are removed. If the plaintiff in whose favour these errors have occurred, consents to waive the benefit of them, he cannot complain. Justice is done, and a long continued controversy is terminated.

The superior court is, therefore, advised to accept the report of the auditors, provided that the plaintiff deduct the amount due upon the note and due-bill, mentioned in the remonstrance, at the time of the award. And if the plaintiff refuse to make such deduction, the court is advised to reject and set aside the report.

In this opinion the other Judges concurred.

Report accepted conditionally.