*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

The towns of WINCHESTER and COLEBROOK *against* HINSDALE and others:

### IN ERROR.

Service of a petition for a highway on a town, by leaving a copy at the usual place of abode of one of the select-men, is good.

Where a party to a suit had married the aunt of the judge before whom such suit was tried, but before the commencement of the suit, she had died, leaving issue, who, as well as the husband, were living at the time of trial; it was held, that such judge was not thereby disqualified to judge in the cause.

The county court has no power to establish part of a highway laid out entire, by a committee, and to reject the residue, but must establish or reject the whole. [The Chief Justice dissenting.]

After the reversal of a judgment of the county court, establishing part of a highway laid out by a committee, the cause will be remanded to the county court to be proceeded with according to law, without any specific direction as to ulterior proceedings.

THIS was a petition to the county court, for a highway, from the road, which passed the dwelling-house of *Jonathan Coe,* in *Winchester,* at a point between his dwelling-house and the *Greenwoods* turnpike road, running in a *North-westerly* direction, through the valley, to the *South* line of *Colebrook;* thence up the valley, to the *Waterbury-river* turnpike road, at some point between the dwelling-house of *John Corbin* and *Enos North* in *Colebrook.* Annexed to this petition was a citation to the towns of *Winchester* and *Colebrook,* on which the officer who served it, made the following return: " By virtue of this petition and citation, I left a true and attested copy of this petition and citation at the usual place of abode of the within named *Enos North,* one of the select-men of the town of *Colebrook,* and one of the principal inhabitants of said town, with my return endorsed on said copy; and also delivered to *Wheelock Thayer,* one of the principal inhabitants and one of the select-men of the town of *Winchester,* a true and attested copy of this petition and citation, with my return endorsed thereon, and read this petition and citation in the presence and hearing of said *Thayer.*" The towns of *Winchester* and *Colebrook* made default of appearance; but certain individuals interested in the application appeared and opposed it. The court appointed a committee to enquire into

the convenience and necessity of the highway prayed for; and if they should find such convenience and necessity, to proceed to survey and lay out the road, and assess the damages thereby accruing to individuals. The committee stated in their report, that before they entered upon the duties of their appointment, they took the oath prescribed by law for committees in such cases; that they gave twelve days notice to a majority of the select-men of the town of *Winchester*, and twelve days notice to a majority of the select-men of the town of *Colebrook*, of the time and place of their meeting for the purpose of entering on the duties of their appointment; that they also caused a notification in writing of the time and place of their meeting to be set upon the public sign-post in the town of *Winchester*, and also in the town of *Colebrook*, twenty days before such time of meeting; that they met pursuant to said notice, when and where they examined the highway prayed for, by the petitioners; and after full enquiry and examination, and a full hearing of all the parties interested, with their evidence and exhibits, they were of opinion and did find, that said highway, as prayed for in said petition, would be of common convenience and necessity; that after several adjournments, they proceeded to survey and lay out said highway, and assess the damages to individuals, commencing in the town of *Colebrook* at a stake and stones in the *East* line of the *Waterbury-river* turnpike road, and the *West* line of a lot of land, owned by *Enos North*, thence *South*, &c., [describing sundry courses and distances,] to a heap of stones, in the line of the old highway, between the *Greenwoods* turnpike and the dwelling-house of *Jonathan Coe* in *Winchester*. The report being returned to the court, the petitioners again appeared, and the respondents also appeared and filed their remonstrance to the acceptance of such report; the parties were fully heard thereon; and the court was of opinion, and did find, that a part of said road, as surveyed and laid out by the committee, was of common convenience and necessity; and were also of opinion and did find, that said remonstrance was not proved; and that said report ought to be accepted, and said highway, as laid out by said committee, established, from the *Northern* commencement thereof in *Colebrook*, to the *Northern* line of the land of *Silas Hoskins*, in the town of *Winchester*, as described in the report, but no farther; and

*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

the residue of said report was rejected, and the proposed highway therein described disapproved of.

Before the acceptance of the report, *Peter Corbin* and others, through whose land the highway was laid out, and to whom damages had been assessed, by the committee, moved the court for a jury to re-assess the damages; which was ordered by the court; and such damages were re-assessed accordingly. On the return of the proceedings before the jury, *Amos Tolles,* a person interested in, and affected by, the laying-out of the highway, appeared before the court, and remonstrated against the acceptance of the report, alleging that said committee did not, before they entered on the duties of their appointment, take the oath or affirmation prescribed by law, nor were they, in any manner, sworn to the due and faithful performance of the duties of their appointment. The petitioners objected to the reception of this remonstrance, claiming that it was filed too late. The court sustained the objection, and refused to receive the remonstrance.

On the hearing of the bill in form presented to the court, the respondents objected to it, on the following ground. In all the previous proceedings before the court, it was composed of *David S. Boardman* and *William M. Burrall,* Esqrs. alone; *Morris Woodruff,* Esq., the other judge, having declined to sit in the cause. In *January,* 1800, *Martin Rockwell* of *Colebrook* was legally married to *Mary Burrall,* who was the sister of Judge *Burrall's* father. She died before the commencement of this suit, leaving issue, who are still living. Her husband also is still living; and during all the proceedings in this suit, was an inhabitant of the town of *Colebrook,* owning real and personal estate therein liable to be and actually taxed for the purpose of defraying the expenses of that town. At the commencement of the trial, Judge *Burrall* openly stated these facts in court, when the counsel of the respondents were present; and no objection was made, by either party, to his sitting in the cause. The court decided, that Judge *Burrall* was not, by reason of these facts, disqualified from judging in the cause; and the same court, thus composed, allowed and passed the bill in form.

On a writ of error, brought by the respondents, in the superior court, the judgment of the county court was affirmed;

and thereupon the record, by motion in error, was brought before this court for revision.

*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

*W. W. Ellsworth* and *L. Church*, for the plaintiffs in error, contended, 1. That there was no legal service of the citation on the select-men of the town of *Colebrook*. In the absence of any statute provision regarding the mode of service, it must be personal—*i. e.* actual notice must be given. Here the citation was not read to the select-man; nor was a copy delivered to him, but merely left where he might never see it. The town has had no notice; and has done no act, by which the want of service has been waived.

2. That there was no court competent to try the cause and render judgment; one of the two judges being nephew by marriage to a party to the proceeding. This relation disqualified him, both by our statute, (*Stat.* 148. *tit.* 21. *s.* 38.) and at common law. The husband and wife being considered one flesh, those who are related to the one by blood, are related to the other by affinity. 1 *Bla. Com.* 435. n. 2. by *Christian.* The affinity to the husband does not cease, by the death of the wife, especially where there is issue living. *Mounson* v. *West,* 1 *Leon.* 88. *Co. Litt.* 156. *a.* n. 1. and 2. by *Hargrave.* 3 *Bac. Abr.* 748. (*Gwil.* ed.) *tit.* Juries, *E. Hartford Bank* v. *Hart,* 3 *Day* 491. 5 *Mass. Rep.* 92. *Rockwell,* being a member of the corporation, is a party to this proceeding, and is liable directly on an execution.

3. That the judgment of the county court is erroneous. That court has no power to *lay out* a highway. It may appoint a committee ; and that committee must lay out the road ; and what is finally done must be the precise act of that committee. Now, a road from *A* to *C,* is not their road from *A* to *B,* an intermediate point. Every consideration for laying a road from *A* to *C* may be wanting in laying one from *A* to *B ;* and if the latter road is established, it is an original and independent act of the county court. Besides, the damages are assessed with reference to the *whole* road. If a part of the road is cut off, the advantages contemplated by the committee, and in view of which the assessment was made, may be lost. [There were some other points, which it is not now necessary to state.]

*Litchfield,*
*June, 1837.*

Winchester
*v.*
Hinsdale.

*P. Miner* and *T. Smith,* for the defendants in error, contended, 1. That the service was sufficient. When a statute requires service, but does not prescribe the mode, it is sufficient if it be in conformity to the general law on that subject. That a copy left as this was, would, in any other case, be good service, will not be denied. Besides, the party appeared ; and it is now too late to make the objection.

2. That Judge *Burrall* was not disqualified to sit in the cause. The rules of the common law regarding jurors, are not applicable to judges, who are presumed to be impartial in all cases. 3 *Bla. Com.* 361. The only disqualifications known to our law, are those created by statute ; (*Stat.* 148. *tit.* 21. *s.* 38.) among which the relation between the judge and a party of uncle and nephew by marriage, is one. But this relation is a disqualification only while it subsists ; and as the marriage is essential to its existence, it ceases when the marriage is dissolved, as it is by death. Further, *Rockwell* was not a *party,* in this case. He had only an interest ; the *town* was the party.

3. That the court has a right to establish the whole road laid out by the committee, or *any part* of it. The legislature intended to give the court a complete supervisory power over the doings of the committee. This power has been often exercised ; and thus the statute has received a practical construction. The alterations of the statute at the revision were merely in phraseology, not in substance.

CHURCH, J. The plaintiffs in error, by their assignment of errors, have presented for decision several questions, which, on the trial, were abandoned, or they are so involved in other points decided, that they will not now be discussed. The claim that the county court erred in not receiving the remonstrance of *Amos Tolles,* and the claim that it did not sufficiently appear that the committee was sworn in due season, were very properly abandoned. *Husted* & al. v. *Greenwich,* 11 *Conn. Rep.* 383. *Plainfield* v. *Packer,* 11 *Conn. Rep.* 576.

The only remaining questions necessary to be considered, are, first, whether the petition was legally served upon the town of *Colebrook?* Secondly, whether *William M. Burrall,* Esq. was disqualified to act in the cause as one of the judges of the county court? Thirdly, whether the county

court could accept in part the report of the committee, and establish a part of the entire highway laid out, and reject the residue ?

1. Service of the petition was made upon the town of *Cole-brook,* by leaving a copy of it, in the usual manner, at the usual place of abode of *Enos North,* one of the select-men of that town. The statute under which these proceedings have been instituted and conducted, directs, that "a citation shall be served on one or more of the select-men of the town within which the highway is moved to be laid out or altered. *Stat.* 269. *tit.* 48. *s.* 12. But the manner in which the service of this citation is to be made, this statute does not prescribe : therefore, it must be made as directed by some of the laws regarding the service of civil process. The "act for the regulation of civil actions" and also the "act regulating proceedings in equity" provide, that service of process shall be made, either by reading or by leaving a copy of the process at the usual place of the defendant's abode. *Stat.* 36. *tit.* 2. *s.* 5. 196. *tit.* 30. *s.* 1. And the "act enabling communities to enforce and defend their rights," enacts, that "service of the writ by leaving a true and attested copy of it, by some proper officer, with their clerk, or either of the select-men," &c. "shall be sufficient notice for them to appear and answer." *Stat.* 131. *tit.* 16. *s.* 1. We have no doubt but the service which was made in this case, essentially conformed to these several statute requisitions, as well as to the uniform and sanctioned usage in such cases.

2. We are equally well satisfied, that no such relationship existed between Judge *Burrall* and *Martin Rockwell,* Esq. as disqualified the former to give judgment in this case. In *England,* no relationship existing between a judge and a party, is a disqualification. A judge is presumed to be impartial and uncorrupt. By our law, the relationship of uncle and nephew, by nature or marriage, disqualifies a judge. *Stat.* 148. *tit.* 21. *s.* 38. By the marriage of his aunt with *Rockwell,* Judge *Burrall* became nephew by marriage to that gentleman ; but the dissolution of the marriage, by the death of the aunt, dissolved the relationship of uncle and nephew which had been constituted by the marriage. The circumstance that children of the marriage survive, does not, in our opinion, operate to continue the affinity ; for although Judge *Burrall* and Mr. *Rockwell* are, in different degrees of consanguinity, rela-

*Litchfield,*
*June, 1837.*

Winchester
*v.*
Hinsdale.

ted to the surviving children, we see not that, from this cause, they are connected in any degree of affinity with each other. 1 *Bla. Conn.* 436. Some affinities have been recognized, by the laws of *England,* as existing between individuals, for some purposes, which, we think, have never been adopted in this state; derived, as such laws have been, from the canon laws, which found little favour with our puritan ancestors. And therefore, so far as we are informed, it has never been supposed, in this state, that a widow might not legally marry a brother of her deceased husband. 1 *Bla. Com.* 436. n. *Stat.* 137. (ed. 1835.)

3. The last question, which we have supposed it necessary to decide, has presented more difficulties. But a majority of the court, from a most careful consideration of the statute, *now in force,* relating to highways and bridges, and under which the county court, in the present case, acted, have not been able to discover any authority in that court to accept and establish, *in part,* the report of the committee, laying out the road in question, while it rejected the residue. By a former statute on this subject, now repealed, the county court, either by a disinterested committee, *or otherwise,* had authority to enquire into the conveniency and necessity of the road prayed for. By that law, it was made a preliminary duty of *the court,* either by the aid of such committee, or in some other way, to decide upon such convenience and necessity; and if such convenience and necessity were found to exist, then it became the duty of such court to appoint a committee to view and lay out the highway. *Stat.* 377. (ed. 1808.) Under that law, a variety of practice, to some extent, prevailed. In some instances, the court, upon a view and examination of its own, determined this preliminary question; in others, a committee performed the same duty; and in others still, the court and committee acted, in some respects, concurrently. While such a various practice existed, and which was, in some measure, warranted, by the statute referred to, it is not improbable, that the county courts frequently modified the doings of committees, and perhaps accepted or rejected their reports in part, as has been done in the present case. But we believe, that such irregularities were intended to be reformed, by the present law, under which these proceedings were had.

By the present provisions of law, it is made the duty of the

*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

county court, if no sufficient objections to the application be shown, to appoint a committee, in the first instance, whose *sole duty* it is, to enquire into the convenience and necessity of the highway ; and if necessity and convenience be found, by such committee, to lay out the road and assess the damages. Here is no provision for the exercise of concurrent powers. The court has so far a supervisory and controuling power, that it may reject the report of the committee altogether; but it may not reject one part, while it accepts and adopts another, intimately, and perhaps essentially, connected part.   The statute, in defining the power of the court, in this respect, speaks of the report of the committee as an *entire* thing.   The language is, " if upon a hearing of objections to the report of the committee, the court shall be of opinion that it ought not to be accepted, they may reject the same." *Stat.* 270. *tit.* 48. *s.* 12.   The duty of the committee is to enquire into the convenience and necessity of the highway ; and if nothing explanatory appears on their report, it may well be presumed, that the decision of this question has been made upon a connected view and consideration of the entire road ; and that without the whole, they would not have believed any part of it to have been of common convenience and necessity.   And it is not improbable, in this very case, that the county court has rejected that section of road laid out, which, more than any other, induced the committee to report the whole to be of common convenience and necessity.   If the court may exercise the power now claimed, we think it very obvious from the reasons suggested, that they may lay out a highway, which the committee has not found to be of common convenience and necessity ; and this cannot lawfully be done.   The exercise of such a power as has been exerted in the present case, may produce injustice.   Committees, in the assessment of damages, are not restricted to the value of the land, taken for the highway ; but they may award more or less, or no damages at all, to an individual, because the highway, *as they have laid it out,* will be promotive to him of greater benefits than the value of his land.   2 *Mass. Rep.* 489.   *Commonwealth* v. *Norfolk,* 5 *Mass. Rep.* 435.   *Commonwealth* v. *Middlesex,* 9 *Mass. Rep.* 388.   *Windsor* v. *Field,* 1 *Conn. Rep.* 279.

Suppose, therefore, a committee, upon this principle, refuse to assess damages to a person whose land is taken for a highway,

*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

and then the court, by a partial acceptance of the report, as in this case, effectually destroy all such anticipated benefit ! It is true, that in such case, the injured party may have a remedy, by a resort to a jury for the re-assessment of damages ; but this remedy is vexatious and expensive, and one to which no person should be unnecessarily driven.

We do not say, that the report of a committee laying out a highway, may not be so divisible, and the several sections of road laid out be so disconnected, that the court may not act upon each, independently of the other. It is sufficient, in the present case, that the road here prayed for, and laid out, by the committee, is entire and indivisible, and such an one as the court could not, as we think, disconnect, by a decree establishing it in part, and rejecting it in part. And on this ground alone, we are of opinion, that the judgment of the superior court ought to be reversed.

BISSELL, HUNTINGTON and WAITE, Js., concurred in this opinion.

WILLIAMS, Ch. J. I feel compelled to differ from my brethren upon the point which has procured a reversal of the judgment in this case. And the simple question is, whether the county court have a right to reject the report of a committee who have laid out a road, in part, or whether they must reject or accept it *in toto.*

It seems to me, that the statute meant to vest the power of laying out highways in the county courts ; and that these courts are accountable for its due and proper exercise ; that although they must employ a committee to view for them, yet the doings of that committee are subject to the supervision of the court. They are, like a master in chancery, or our committee in chancery, to furnish facts and to express their opinion thereon ; all which, however, is to be subject to the review and final decision of the court. Or they may be compared to auditors in actions of account and book debt. The court must appoint them, in the former case, and may, in the latter. The statute requires, that they shall adjust the accounts, and award that the party in whose favour they find the balance to be due, shall receive the same ; and on the return and acceptance of the report, the court shall render judgment that the party in

whose favour it is made, shall recover the sum found to be due, &c. The court, however, are to *accept the report.* To determine whether this shall be done, they must hear, examine and weigh the objections to it, and each of them. And in *Smith* v. *Brush,* 11 *Conn. Rep.* 359. 368., it was said, and supposed to be the opinion of the court, that "it would seem to follow, that if the court were bound to examine each particular item, they might reject one or more of these items, when they were so distinct that this could be done without interfering with other parts of the account." The same reasoning will apply to the report of a committee laying out a highway ; as it is perfectly apparent, that there may be cases where such a power would be almost necessary. For example ; a road is requested from *Windsor* to *Hartford;* a committee is sent out, who find ground *West* of the present road, by which all the clay ground is avoided until within two miles of the state-house ; they then cross the present road and go *East* into the meadow ; the court are of opinion that the *West* section is of great advantage, but that the section *East* of the old road will be subject to be overflowed, by freshets, and will be very expensive. Upon our construction, they must reject what would be a great public advantage, or encumber it by a useless and expensive appendage. They have indeed the right to accept the whole, and then, at the next court, discontinue that part of it which they think unnecessary, upon application made for that purpose. But if, as it was said in *Plainfield* v. *Packer,* 11 *Conn. Rep.* 581., "applications for highways are necessarily tedious and expensive," I am not disposed to add new embarrassments to them. And under the construction given to our statutes regarding highways, I believe the uniform practice was, for the county court to accept the road laid out by the committee, in part or in whole, as they judged proper.

It is said, however, that by the existing statutes, that practice cannot be allowed. To determine this point, we must compare the statutes now existing with some of earlier date. The 11th section of the act concerning highways, in the edition of 1808, which is almost a transcript of the statute of 1784, prescribed the mode of making application to the county court for a highway ; and provided, that if no objections were offered, or if the objections offered were adjudged insufficient, the court might enquire, by a disinterested committee or otherwise, into

*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

the convenience and necessity thereof; and if the same was judged, *by the court,* to be of common convenience and necessity, they were to appoint a committee to view and lay out or alter such highway; which committee, after notice given, were to perform this service according to their best skill and judgment, with the most convenience to the public and the least damage to private property; and should ascertain the place and course of such highway, and estimate the damage done to any particular persons, by laying out the same, and make return thereof in writing, under their hands, to said county court; which being approved by said court and recorded, said highway should be and remain a common highway. *Stat.* 377. (ed. 1808.) In *May,* 1814, the law was modified; so that if the court adjudged the objections offered to the petition, in the first place, to be insufficient, they were to appoint a committee to enquire into the convenience and necessity of the road prayed to be laid out or altered; and if this committee were of opinion that the road was of common convenience and necessity, they were to lay it out, assess damages, and make report of their doings, and return the same to the court; and then all persons interested might appear and remonstrate, and shew that the road was not of common convenience and necessity, as well as that it was injurious to individuals, and ought not, in other respects, to be accepted. This statute was obviously intended to alter the former law, in two respects : first, that if no sufficient objections were shewn to an application for a highway, the court must send out a committee to enquire, and could not enquire *otherwise,* as it had been held, by this court, in *Windsor* & al. v. *Field* & al. 1 *Conn. Rep.* 279 284., they might do. Secondly, it had been adjudged, by the county court, under the former statute, that after the court had decided, that the road was of common convenience and necessity, and had sent out a committee to lay it out, individuals could not come in and try that question, upon the report of the committee. This statute provided, that after such report, this objection might be made; but it left the subject of the approval of such report by the court, just as it was before, and repealed only so much of the former act as was inconsistent with these provisions. Under these statutes, so far as I am informed, the county courts uniformly accepted reports in part or in whole, as in their opinion the merits required; and I should say with the

court in *Bennett* v. *Hall,* 1 *Conn. Rep.* 418. immemorial usage has sustained it ; nor do I see any objection to it.

But it is supposed, that the statute, by the terms of it, as revised in 1821, requires a different construction. It is believed, that those who compiled that act intended to condense the old laws then existing, taking into view the construction given them by the courts. (*a*)    With this in view, we find, that the old law regarding highways, as altered by the statute of 1814, and by another act of 1802 relative to the powers and duties of a jury in the re-assessment of damages, is re-enacted.    The introduction of these two acts required some variation of the phraseology ; and whether this is such as requires a new construction to this part of the act, is the question.    After introducing the two acts of 1802 and 1814, which, I think, it will not be claimed, changed the power of the court as to accepting the report in part, the revised statute goes on and makes provision that the persons aggrieved as to damages may move for a jury, upon the return of the report ; and if the court are of opinion that the report ought not to be accepted, they may reject it ; but if they think it ought to be accepted, then before acceptance, upon application, they may order a jury, whose powers and duties are prescribed ; and if, on the return of the jury, accepted by the court, they shall not add to the damages, the court shall accept the report ; and if the damages are increased, the report shall be accepted, with such increased damages. After this, the statute pursues almost the words of the former act : "And when so accepted, in either of the cases aforesaid, and approved by the court, the report shall be recorded, and said highway shall be and remain a public highway." *Stat.* 269, 270, 1. *tit.* 48. *s.* 12.

It seems to be supposed, that because these words are used, the court shall accept the report ; and that it becomes imperative upon the court to accept the whole report.    But this provision ought to be taken in connexion with that which precedes it.    It is founded entirely upon the fact that the court had before been of opinion that the report ought to be accepted.    That being the case, a jury, upon application, are to be sent out as to damages ; and as another section has made their return as to damages conclusive, to make all consistent, the act provides, ·

(*a*)  This is in accordance with the recollection of the reporter, who was one of the committee of revision.

*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

that whether they do, or do not, increase the damages, the report shall be accepted, but leaves the statute substantially as it was before ; because there is nothing more imperative than before, except that when the court have given an opinion that the report laying out the road ought to be accepted, that opinion is not to be changed, by the result of the jury as to damages.

It has been said, that by the statute, as now existing, the powers of the court and committee are entirely distinct. It is true, the duties of the committee are distinct from those of the court. This is equally true with regard to committees in chancery and auditors ; but does it hence follow, that the court has not a superintending power over such committees or auditors ?

It was also said, that we decided in *Plainfield* v. *Packer* & al. that the doings of the jury were conclusive. That is true ; for the statute makes them so, in express terms, with one or two exceptions.

It was also said in the argument, that great injustice might be done as to damages ; because the rule might be very different, if the whole road was opened, or only a part. But this difficulty seems to be well guarded against. The court are to declare their opinion upon the report, as they decided in this case ; and then the persons who suppose themselves aggrieved have an opportunity to pray for a jury, if they see cause.

It seems to me, then, that the power which the court exercised, in this case, is one highly proper for a court to possess ; that they always did exercise and possess it, under the former statutes upon the subject ; and I can discern nothing in the revised statutes, by which this power was taken away, or which leads me to think that it was intended to be taken away. I am, then, forced to the conclusion, that there is nothing erroneous in the judgment complained of.

Judgment reversed.

---

After the reversal of judgment, the defendants in error moved, that the cause should be remanded to the county court for ulterior proceedings ; and thereupon the question arose, what judgment ought the county court to render, when the cause comes again before them ?

The counsel for the defendants in error, contended, that the only proceedings which could be had in the county court, would be, to enter up judgment upon the report of the committee, accepting it entire, and establishing the whole road. The petitioners aver, and the committee have found, that the highway prayed for will be of common convenience and necessity. Upon the coming in of the report, it would have been the duty of the court to accept it, if no objections had been made. *Stat.* 271. *tit.* 48. *s.* 12. There was in fact a remonstrance; but as the court has found, that it was *not proved*, the case stands on the same ground as though no objections had been made. The error, and the only error, of the court, was in accepting the report and establishing the road *in part*. It is the *qualification* alone, that is affected by the judgment of reversal: in every other respect, the record remains untouched.

But if this view of the case is not correct, still the court below must begin at the first error—*i. e.* with a trial of the remonstrance *de novo*. The report of the committee stands good. There is no reason for sending them out again.

The counsel for the plaintiffs in error, insisted, that there must be a new trial, by the court and committee, on the great question in issue, *viz.* whether the entire road prayed for was of common convenience and necessity.

THE COURT decided, that the cause must be remanded to the county court, *to be proceeded with according to law;* but declined giving any specific direction to that court in relation to ulterior proceedings in the cause.

Cause remanded.