[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes before the court on the application of defendant Bradley R. Baran to dissolve attachments of his property made by the plaintiff without a judicial finding of probable cause, pursuant to a written waiver of the provisions of Chapter 903A C.G.S.
Baran is a limited partner in a partnership known as Hilltop Limited Partnership, which partnership was a partner in the defendant Valley View Joint Venture ("Valley View"). The plaintiff bank loaned $2.5 million to Valley View and took a construction mortgage for a condominium project that Valley View CT Page 10838 was undertaking in Naugatuck. The bank subsequently advanced $400,000 to Valley View in a line of credit for which it required and received the personal guaranties of Stephen M. Stewart, the managing partner of Valley View, and Baran.
After a full hearing, the court finds the facts to be as follows. The bank asserts that it is owed $400,000 plus interest and costs as to the line of credit and attached Baran's property in that amount on the basis of his guaranty. The allegations of the complaint, however, contain only the tip of the iceberg. Up until April, 1991, the bank had been crediting the proceeds from condominium units sold in such a way that the amount due under the line of credit to which Baran's guaranty applied had been reduced from $400,000 to $16,382.32. Bank officers and defendant Stewart testified that this reduction of the amount due under the line of credit was the result of an agreement reached between Valley View and the bank in June 1989, when the $2.5 million mortgage matured. The condominiums had not been selling as well as had been hoped, and the bank proposed that it would extend the mortgage and apply the proceeds of sales of units first to the interest due on the mortgage, then to interest due on the line of credit, then to the principal on the line of credit, provided that Baran supply a guaranty as to $400,000 of the mortgages and provided that Caroline Stewart, wife of Stephan Stewart, provide a guaranty of the mortgage in the amount of $200,000.
The bank sent counsel for Valley View a draft of the mortgage extension and the two guaranties and, without actually having received either signed guaranty, began crediting proceeds of sold units as indicated above. Caroline Stewart in early 1991 supplied the bank with a guaranty backdated to February 13, 1990 (Ex. I). Baran refused to provide a guaranty as to the mortgage.
Having acquired an appraisal which indicated that the value of the condominiums was only approximately $1.5 million, while its mortgage loan was for $2.5 million, and not having received any guaranty from Baran as to the mortgage loan, the bank reallocated the payments it had received to the mortgage loan, and advised Baran on July 3, 1991 that the balance due on the line of credit was not $16,382.32, but in excess of $400,000.
Baran claims that the bank, having allocated payments in a manner that reduced his exposure on his guaranty, cannot reallocate them in a way that increases that exposure. Baran cites 60 Am. Jur.2d Payments, 102, to the effect that once a payment has been applied to an obligation for which a surety or guarantor is bound, such surety or guarantor is discharged to the extent of the payment, unless the guarantor agrees to the change in allocation. CT Page 10839
The same commentator on the law of payments observes, however, that "the general rules regarding the application of payments will not be followed when, from the circumstances surrounding the case, it appears that their application would be inequitable or unjust." 60 Am. Jur. Payments 94, citing Winfield v. Reliance Ins. Co.,212 N.E.2d 10, 113 (Ill. 1965); Dallas Title Guaranty Co. v. Valdes, 445 S.W.2d 26, 32 (Tex. Cir. App. 1969). See, to same effect, Industrial Investment Corp. v. Rocca, 643 P.2d 1090, 1092
(Idaho App. 1982).
Baran claims that he was a third party beneficiary of the agreement between the bank and Valley View to apply the proceeds from sold units in a manner that reduced his exposure on his guaranty. That allocation, however, was the product of an agreement which included the promise of Valley View to provide a $400,000 guaranty from Baran applicable to the mortgage deed. While Baran was not a party to the allocation agreement, his refusal to provide the guaranty resulted in a breach of Valley View's obligation to supply such additional security in return for the bank's agreement to allocate payments in the desired manner. At least part of the reason the bank allocated payments as it did was the agreement of Valley View to supply the $400,000 guaranty from Baran, whom the bank knew to have considerable assets. This is not a situation in which the bank unilaterally credited payments and then sought to reallocate,' rather, the method of allocation was the result of a bargain with the debtor. Even in situations in which allocation to a particular debt is not a matter of agreement between the parties, early Connecticut case law counsels that the courts will apply payments "according to the justice of the case." Ford Brothers Inc. v. Ward Co., 107 Conn. 425,431 (1928); American Woolen Co. v. Maaget, 86 Conn. 234
(1912). When allocation is the result of an agreement, it is equitable to recognize the terms of the agreement in determining the final allocation.
It would be unjust to hold the bank to the allocation of payments to reduce the line of credit, as to which it had the guaranty of Baran to the extent of $400,000 when Valley View had not, because of Baran's own refusal, been able to fulfill its obligations under the agreement that led to such allocation. The agreement at issue is not, as Baran argues, unenforceable pursuant to the statute of frauds, 52-550 C.G.S., since the bank is not seeking to hold Baran liable on a nonexistent guaranty as to the mortgage note but is only exercising its right to determine allocation of the payments received according to its own discretion after Valley View failed to supply the consideration for the bank's allocation of the debt in the manner desired by the debtor. Baran argues, in effect, that he is entitled to enforcement of the allocation agreement even though Valley View, CT Page 10840 having failed to provide the consideration, could not enforce it. He offered no evidence that he relied in any way upon the original allocations by the bank, and this claim was merely an argument by counsel, unsupported by evidence.
Absent the allocation agreement, the bank would have recourse to Baran to the extent of $400,000. If Valley View had complied with its obligations in the allocation agreement, the bank would have had a $400,000 guaranty from a solvent party as to the mortgage loan, and this guaranty would have offset the diminution of its access to a solvent guarantor on the line of credit loan.
It is undisputed that Baran did not make any of the payments the allocation of which is at issue.
The court finds that the bank has established probable cause to the standard set forth in Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 156 (1991), that it was entitled to reallocate payments to preserve its security, that a balance of $400,000 exists as to the line of credit for which Baran has supplied a guaranty on which he is likely to be held liable, and that there is probable cause to attach his assets to the extent of $475,000. The bank has agreed to release its attachments on all properties other than the West Haven property as the attachment of that property is sufficient. The motion to dissolve the attachment is denied.
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT