Scott, C. J.
Where one person is indebted to another on various accounts, he has an undoubted right to choose which debt he will pay first; and where he tenders a sum sufficient fully to discharge any particular debt, he has a right, at the time, to direct its appropriation accordingly. But this right must be exercised at the time of payment. A debtor cannot, without the consent of the creditor, thus dictate the application of partial payments, nor can he require the creditor to accept choses in action, from the. collection of which money may be obtained, and to apply the proceeds in payment of a debt. It is at the option of the creditor to accept such partial payment, or to receive anything else than money in dissharge of his debt. But if a partial payment be accepted by the creditor, or if, without objection, he receive promissory *511 notes or other choses in action to be collected, and applied as a payment, he is bound by his acquiescence, in either case, to make the appropriation of the payment, which the debtor at the time of parting with his money or effects, may have directed. But if the debtor make no express appropriation at the time of payment, and there are no circumstances from which his intention to do so, can be fairly and satisfactorily inferred, he cannot afterward direct its application, but the creditor may appropriate such general payment to any valid debt due him from the debtor at the time of payment. Whenever the intention of the parties can be ascertained, there is no reason why it should not control, as in other matters of contract. Where no express appropriation is made by the debtor, the law will sometimes infer an intention' on his part to make a particular appropriation, from the intrinsic equity of such appropriation ; there being no circumstances to indicate a contrary intention. Thus, where a payment is made to apply on an open running account between the parties, without any designation of the items on which it is intended to apply, the law will, upon equitable principles, infer the debtor’s intention to appropriate the payment in discharge of the earliest items, in the order of their dates.
From the general principles which we have stated, and which seem to be so well settled as not to require the citation of authorities in their support, it results that the debtors, Gaston & Co., having made no special appropriation of the funds to arise from collections of the claims delivered to their creditor, at the time of delivering the same, it became the right of the creditor, Barney, to make any application thereof not inconsistent with the terms of the receipt. But it is claimed that this right was not exercised by him at the proper time, and was thereby lost: that after suit brought, his right of election ceased, and it became the duty of the court to appropriate the payments according to its sense of justice and propriety. Authorities are not wanting in support of this position. In United States v. Kirkpatrick (9 Wheat. 720) it was said by Justice Story: “It is certainly too late for either party to claim a right to make an appropriation after *512 the controversy has arisen, and a fortiori at the time of the trial.”
It is no doubt the rule of the civil law, that where no application of a payment is made at the time, either by the debtor or creditor, the law will make the application, upon the presumed intention of the debtor, to that debt a relief from which will be most beneficial to him. This rule was adopted and followed by Justice Cowen, in Pattison v. Hull, 9 Cowen R. 747, where he seems strongly to favor the whole doctrine of the civil law on the subject. The same opinion is expressed by Justice Story, in Gass v. Stinson, 5 Sumner’s R. 98. But we think the weight of authority seems to establish it as the rule of the common law that the creditor may make the application at any time as between himself and the debtor, but if the rights of third parties are concerned and affected by the time of application, the creditor should make it in a reasonable time. Chitty on Cont. 650, notes; Smith’s Mercantile Law 670. Peters v. Anderson, 5, Taunton 596; Phillpot v. Jones, 2 Ad. & El. 41; Mills v. Fowkes, 5, Bing. N. C. 455.
In Mills v. Fowkes, it was said by C.J. Tindall: “ The defendant here contends that where the creditor fails to make any appropriation at once, the law will appropriate the payment to the more burdensome debt, but the decisions are clearly the other way.” And then, after referring to several cases, he adds: “ These cases show clearly that the receiver has a right to appropriate, if the payer omit to do so; and Simpson v. Ingham, that he may make the appropriation at any time before action.”
In Phillpot v. Jones, Lord Denman, C.J., said: “The defendant made no appropriation of that payment; the plaintiff, therefore, might elect, at any time, to appropriate it to this part of his demand,” In the same case, Justice Taunton said: “ Here the 171. was paid without any application to particular items of the account. The plaintiff then might apply that payment to the items in question, and he was not bound to tell the defendant at the time that he made such application, He mi jht malee it at any time before the case came under the consideration of a jury.”
*513 But supposing the rule to be, that the creditor should make the application in a reasonable time, still the circumstances of the case must determine what is a reasonable time. In the present case, the creditor co,uld not be expected to apply the payments until the claims placed in his hands were collected. At the time of bringing suit these claims were only in part collected; the remainder were being collected; the expenses of collection were unknown; the plaintiff gave instructions to his attorneys in respect to the application, on the day of bringing suit; he notified the defendants of his election, upon their first inquiry, and made actual application of all the sums collected accordingly, before the defendants answered in the action. It is not perceived how the defendants were prejudiced by the plaintiff’s neglect to make an earlier appropriation,- nor do we think there was an unreasonable delay on his part.
But assuming that the plaintiff below could not make the appropriation after bringing suit, and that the duty of directing the application was then devolved upon the court, should the payments have been differently • applied ? The principal debtors could have no direct interest in the question. They were indebted to the plaintiff in the amount of the four notes, less the payments in question, and the aggregate amount of the judgments to be rendered against them in the two suits would be unaffected by the manner of the application. But it is claimed that for the benefit of the surety, Gordon, the payments should have been appropriated to the notes on which he was a party. Such is the. admitted rule of the civil law. But we think the weight of authority shows the rule of the common law to be different. “ An intention on the part of the debtor to appropriate to a particular debt is, perhaps, more easily presumed, in favor of a surety, where there are any circumstances which can be considered indicative thereof; but in the absence of such circumstances, iho law, it seems, will not apply a payment in his favor.” Smith’s Mer. Law, 672.
In Plomer v. Long, 1 Stark. 122, suit was brought on a bond against principal and surety, and payment was pleaded. *514 Upon the trial it was claimed that general payments made by the principal, who was at the same time otherwise indebted to the obligee, should be considered as made in ease of the surety, who had no power to direct the application. But Lord Ellenborough held otherwise. He said: “The plea is payment, and the question is, whether the payment was made animo solvendi. The general rule is, that where nothing is directed as to the application, the person who receives it may apply it; in a court of law this can not be considered as a payment in discharge of the bond, without some circumstances to show that it was so intended.”
In Field v. Holland (6 Cranch, 8), the supreme court of the United States refused to follow the rule of the civil law on this subject. In that case, Ch. J. Marshall said, “It is contended by the plaintiffs, that if the payments have been applied by neither the creditor nor the debtor, they ought to be applied in the manner most advantageous to the debtor, because it must be presumed that such was his intention. The correctness of this conclusion can not be conceded. When a debtor fails to avail himself of the power which he possesses, in consequence of which that power devolves on the creditor, it does not appear unreasonable to suppose that he is content with the manner in which the creditor will exercise it. If neither party avails himself of his power, in consequence of which it devolves upon the court, it would seem reasonable that an equitable application should be made. It being equitable that ■the whole debt should be paid, it can not be inequitable to extinguish first those debts for which the securities are most precarious.”
So in Planter’s Bank v. Stockman, 1 Freeman’s Ch. Rep. 502, it was held that, where a creditor has two claims against the same debtor, one of which is secured and the other not, the court will apply a payment made to the debt not secured; and, by analogy of principle, a setoff will be so applied.
In Stamford Bank v. Benedict, 15 Conn. Rep. 437, it was said that the court will make such application of payments, in the absence of any direction by the parties, as that, under all.the circumstances, the greatest equity will be done, or tho *515 mutual intention of the parties, at the time of payment, if it can be ascertained, will be best carried out; and that the result of this principle will be, that, in some instances, payments will be applied upon the oldest demands, and sometimes upon the most precarious ones.
The case last cited bears a strong analogy to the present one. The debtor, in that case, had executed a mortgage to secure to the creditor the payment of a large sum of money, made up in part of four promissory notes, upon which an accommodation indorser was also liable, and, in part, of other sums, for which the debtor alone was liable. Upon foreclosure of the mortgage, and sale of the premises, the creditor applied the whole avails of the sale in part payment of the debts secured by the mortgage, other than the four indorsed notes. It was held that he had a right to do so, and that the indorser was not entitled to a fro rata application of the avails of the mortgage upon the promissory notes secured by his indorsement, nor to any reduction of his liability. And the court said that if, in such a case, the creditor had made no application of the payment, it would, on equitable principles, be applied, by the court, upon the precarious debts.
The interests of a surety can not be permitted to control the intention of the immediate parties to a payment; and, in the absence of circumstances indicating the debtor’s intention m his favor, we are satisfied the law raises no presumption of such intention. Nor, where the several debts are each due at the time of payment, and are distinct and unconnected, will any controlling effect be given to their priority in time.
In the case before us, the debtors, Gaston and Atherton instead of making a direct payment on their indebtedness, delivered to their creditor sundry claims for collection, under an agreement that the net proceeds should 'be applied on their notes which the creditor then held. These notes were the evidence of several and distinct debts, not sustaining to each other the relation of items in a running account which, in the aggregate, constitute but one debt. The notes were all due at the time, and the debtors, Gaston and Atherton, were legally and equitably bound alike for the payment of each of them. The pre *516 sumption which obtains in favor of the earliest items of an account, does not arise in such a case. Had the debtors intended to apply the proceeds of collections so as to relieve their surety, they should have indicated such intention at the time of the transaction. Had they done so, the creditor would, perhaps, have declined the proposition. Not having done so, it must be inferred, from the terms of the receipt, that they were content that the creditor should apply the moneys to be collected,upon any one or more of the four notes, at his pleasure. That he would apply them on the unsecured notes might have been reasonably expected.
The surety was no party to this arrangement, and had no right to control its terms. His principals were dealing, not with his property, but their own. The claims received by the creditor became, in his hands, a collateral security for the payment of the notes generally ; and the surety has no right to ask that the creditor shall not be allowed the full benefit of his own vigilance.
The judgment of the district court must be affirmed.
Sutlife, Peck, Gholson and Brinkerhoee, JJ., concurred.