## THE STAMFORD BANK *against* BENEDICT.

In the absence of any direction, by the debtor who pays money, or the creditor who receives it, as to its application, the court will make such application, as that, under all the circumstances, the greatest equity will be done, or the mutual intention of the parties, at the time of payment, if it can be ascertained, will be best carried out; and the result of this principle will be, that in some instances, payments will be applied upon the *oldest* demands, and sometimes upon the *most precarious* ones, but never to a demand *not due* when payment is made, if there be another debt already due.

Though a surety, who has paid the debt of his principal, may be subrogated into the place of the creditor as to all the securities and funds in his hands applicable to such debt; yet an accommodation indorser or surety is not entitled to the benefit of such securities or funds, until the whole debt is paid.

B was the holder of four promissory notes, amounting to 1115 dollars, made by A, and indorsed by C, for A's accommodation. A failed to pay these notes, at maturity; and being indebted to B in other sums of money, which, with said notes, amounted to 6137 dollars, he gave a new note to B for that amount, secured by mortgage, but the original demands were not extinguished, nor were the old notes and evidences of debt given up to B, and, by the terms of the arrangement, they were not to be cancelled, except upon certain conditions which were never complied with. B then resorted to C for payment of said four notes indorsed by him, his liability, as indorser, having become fixed; and C thereupon executed a mortgage to B, as additional security for the amount due on said notes. A's mortgage to B was then foreclosed, and the mortgaged premises sold, the entire avails of which amounted to only 2818 dollars, after deducting the legal charges. This sum B applied in part payment of A's debts secured by his mortgage other than the four notes indorsed by C. On a bill of foreclosure afterwards brought by B against C, for the amount of those notes, it was held, that B had a right to apply the avails of A's mortgage as he had done, and that C was not entitled to have them applied *pro rata* upon all the debts due to B, which made up his note and mortgage of 6137 dollars; consequently, that C was entitled to no deduction from the amount due on his mortgage to B, by reason of the avails of A's mortgage received by B.

A verbal direction from the directors of a bank to the cashier, without any recorded vote of the board, is a sufficient authority to guide him in the application of moneys officially received by him.

*Fairfield,*
*June, 1843.*

The Stamford
Bank
*v.*
Benedict.

THIS was a bill in chancery for a foreclosure.

At different times on and between the 11th of *December,* 1835, and the 9th of *November,* 1836, *Jesse Whiting* made three promissory notes, and *Whiting & Peck* (a firm consisting of *Jesse Whiting* and *Wilson Peck*) made one, amouuting to 1115 dollars, which were payable to, and indorsed by, the defendant, and discounted by *The Stamford Bank,* for the accommodation of the makers. When the notes became due, the makers failed to pay them, and the defendant was duly charged as indorser. To secure these and sundry other notes, on which *Whiting* was liable, the plaintiffs attached his land. He thereupon made a new note for 6137 dollars, 82 cents, embracing all the liabilities of *Whiting* and *Whiting & Peck* to the plaintiffs, and executed a mortgage of the land described in this bill, as security for the four notes indorsed by him ; such note and mortgage being dated the 22nd of *April,* 1837, and being given as a mere mode of securing the plaintiffs, on the withdrawal of their attachments, additional to the liabilities of other persons on the original notes, particularly additional to the liability of the defendant, by reason of his said indorsements, and not as paying or extinguishing the notes, or the liabilities by indorsement thereon. The original notes and other evidences of debt were not given up to *Whiting,* when the last-mentioned note was given, and the mortgage accompanying it was executed ; but an agreement was then entered into between him and the plaintiffs, by which it was stipulated, that when he should assign to the bank, as further security, his policy on the buildings embraced in the mortgage, and the bank should ascertain that the mortgaged property was subject to no other incumbrance, and was abundantly sufficient to secure said note, the bank was then, and not otherwise, to deliver up said original notes and other evidences of debt. The bank ascertained, that the property thus mortgaged was insufficient to secure the mortgage debt ; that it was incumbered to the amount of 2300 dollars ; that the title to about six acres of the mortgaged land was not in *Whiting,* but in other persons ; and that the value of the mortgaged premises was 2943 dollars, 7 cents, and no more. The policy was assigned to the bank, but not with the consent of the insurers, as the terms of the policy required. The plaintiffs brought ejectment for the mortgaged

premises and a bill of foreclosure, and obtained a judgment in one case, and a decree in the other, in their favour, at the term of the superior court, in *April*, 1839. After foreclosure, the plaintiffs, acting in good faith, and using reasonable diligence, sold the mortgaged premises for 2943 dollars, 7 cents; which was all they were worth, at the expiration of the time limited by the decree of foreclosure. The cashier of the bank, by the verbal directions of the directors, without any recorded vote of the board, applied the proceeds to liabilities of *Whiting* embraced within their agreement with him, and to such only as they had no available security for, other than said mortgage, but applied no part of such proceeds to the notes of *Whiting* and *Whiting & Peck*, indorsed by the defendant; no agreement having been made, by the plaintiffs and *Whiting*, and no direction given by him, regarding any particular application of the moneys arising from the sale.

After the four notes, indorsed by the defendant, became due, and were lying over at the bank, and while his liabilities thereon continued, the plaintiffs attached his property for such liabilities; and thereupon, the defendant, to relieve his property from such attachments, but without any unfair practices or undue influence by the plaintiffs, mortgaged to them the land now sought to be foreclosed, by deed dated *May* 4th, 1837, conditioned that he or *Whiting* should pay the notes. No part of these notes has been paid.

The case was reserved for the advice of this court, as to what decree ought to be passed thereon.

*Hawley* and *Booth*, for the plaintiffs, contended, That the plaintiffs were entitled to a decree for the whole amount of the notes secured by the mortgage. In support of this position, they remarked, 1. That *Whiting's* note and mortgage of the 22nd of *April*, 1837, were given, not in payment or satisfaction, but in lieu of the original notes; not for the purpose of merging them in one claim, but merely as a mode of giving additional security; and to give that security, not to the indorsers or other persons liable, but to the bank. No further time was given to *Whiting*; nor was any remedy against him or the indorsers, extinguished or suspended. They could all be sued on their original liabilities, as before. *Fairchild* v. *Holly*, 10 *Conn. R.* 474. *Tarleton & al.* v.

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1843.*

The Stamford
Bank
*v.*
Benedict.

*Allhusen,* 2 *Ad. & El.* 32. (29 *E. C. L.* 20.) *Nichols* & al. v. *Norris,* 3 *B. & Ad.* 41. (23 *E. C. L.* 28.) *Twopenny* & al. v. *Young,* 3 *B. & Cr.* 208. (10 *E. C. L.* 54.) *Emes* & al. v. *Widdowson,* 4 *Car. & P.* 151. (19 *E. C. L.* 316.) *The Mohawk Bank* v. *Van Horne,* 7 *Wend.* 117. *Bailey* & al. v. *Baldwin,* 7 *Wend.* 289. 2 *Saund. Pl. & Ev.* 61. *Orford Bank* v. *Lewis,* 8 *Pick.* 457. 2 *Pick.* 585. and notes. (2d ed.) *Chitt. Cont.* 531, 2. The agreement between the plaintiffs and *Whiting,* at the time his mortgage was executed, contemplates the original notes as still *subsisting.*

2. That the condition on which the original notes were to be given up, was never complied with.

3. That nothing has since occurred to vary the rights of the plaintiffs. The land, after foreclosure, was sold for its full value at the expiration of the time limited by the decree; and it was thus sold, in good faith, and after every reasonable exertion to get more. *Osgood* v. *Franklin,* 2 *Johns. Ch. R.* 1. S. C. in err. 14 *Johns. R.* 527. *Palmer* v. *Jones,* 1 *Vern.* 144. 2 *Sw. Dig.* 117. 119.

4. That the plaintiffs had a right to apply the proceeds as they did. They had a right to apply them to *any* of their claims, and especially to those which were *least secure.* *Peters* v. *Anderson,* 5 *Taun.* 596. *Clark* & al v. *Burdett,* 2 *Hall* 197. *Field* & al. v. *Holland* & al. 6 *Cranch* 8. 3 *Stark. Ev.* 1093. n. *Plomer* & al. v. *Long,* 1 *Stark. Ca.* 153. *Brewer* v. *Knapp.* 1 *Pick.* 332. *Stone* v. *Seymour,* 15 *Wend.* 19. *Chitt. Cont.* 756. n.

5. That had the plaintiffs made no application, the *law* would have applied the proceeds as they did. Had they obtained no decree against *Whiting,* nor sought a foreclosure of his mortgage, they could have recovered the amount due on these notes of the defendant; and in that case, or if he had paid the whole, and they had afterwards foreclosed *Whiting,*—he, the defendant, could have recovered nothing back from them, until they had got full payment of every debt for the security of which the mortgage was given. They only ask to hold the defendant to his *contract;* which is to pay the debt, his liability being fixed. Their right to apply these proceeds, is the same as it would be, if *Whiting,* without giving a new note and mortgage, had paid this amount *generally.* The very object of the arrangement, on the part of the plain-

tiffs, was to get more security than they had before.  Shall they now be dismissed with less ?   The case is concisely this : the plaintiffs have taken several securities for their claim ; and they ask to have them made available, as far as they will go, to the payment of that claim—not of a part only, but of the whole.

*Bissell* and *Butler*, for the defendant, contended, That he was entitled to a *pro rata* allowance out of the money paid by *Whiting*, or obtained from his mortgage.    In support of this position, they insisted, 1. That the defendant was a surety.    An indorser is in the nature of a surety ; and when he is compelled to pay, may take advantage of any securities, in the hands of the holder, derived from the principal.  *Beardsley* v. *Warner*, 6 *Wend.* 610.    S. C. in err. 8 *Wend.* 194. If an attachment is obtained in favour of the indorsee against the maker, and the indorser pays the note, he is entitled to have the attachment proceed for his benefit.   In the matter of *McKinley* &. al. 1 *Johns. Ca.* 137.    *Mechanics Bank* v. *Hazard,* 13 *Johns. R.* 353.    *Wattles* v. *Laird,* 9 *Johns. R.* 327.    *Baker* v. *Briggs,* 8 *Pick.* 122.    This principle is peculiarly applicable in the case of an accommodation indorser ; and such was the defendant.   *Harris* v. *Brooks,* 21 *Pick.* 195.   1 *Johns. Ca.* 137.   8 *Pick.* 122.

2.  That as such surety, the defendant was entitled to a *pro rata* allowance of the avails of *Whiting's* property ; and his liability is so far extinguished.    Such is the rule of the civil law.   9 *Cowen* 777. *in notis.*    *Bardwell* &. al. v. *Lydall,* 7 *Bing.* 489. (20 *E. C. L.* 213.)

3.  That if no express application of payment is made by the principal, the law will presume an application in favour of a surety ;  and such application will be inferred from circumstances.   *Seymour* &. al. v. *Van Slyck* &. al. 8 *Wend.* 403. S. C. in err. 15 *Wend.* 403.    *Blackstone Bank* v. *Hill,* 10 *Pick.* 129.   *Lincoln* v. *Bassett,* 23 *Pick.* 154.    *Dalton* v. *The Woburn Agricultural & Mechanic Association,* 24 *Pick.* 257.

CHURCH, J.    The facts in this case appearing upon the report of the committee, so far as necessary to a correct understanding of the principles involved in it, are,—that *Jesse Whiting* and *Whiting & Peck* were indebted to the *Stam-*

*ford Bank* in four promissory notes, indorsed by the defendant, for the accommodation of *Whiting* and *Whiting & Peck;* that the defendant became liable to the bank, as indorser, and afterwards, on the 4th of *May,* 1837, he executed to the bank a mortgage of the land described in this bill, as security for the payment of the four notes indorsed by him; that the said *Jesse Whiting* and *Whiting & Peck* were also indebted to the *Stamford Bank* in other sums of money, which, inclusive of the aforesaid notes, amounted to the sum of 6137 dollars, 82 cents, for which sum *Whiting* executed his note to the bank, and also a mortgage to secure the same, on the 22nd day of *April,* 1837; that the original notes and other evidences of debt were not given up to *Whiting,* when the note of 6137 dollars, 82 cents, was executed, and by the terms of the arrangement, were not to be cancelled, unless *Whiting* complied with certain conditions, which, it appears he never did perform; that *Whiting's* mortgage to the bank was foreclosed, and the entire avails of it amounted to no more than 2818 dollars, 7 cents, after deducting the legal charges; which sum, the cashier of the bank, by the verbal orders of the directors, applied in part payment and satisfaction of the other claims of the bank against *Whiting,* which constituted a part of said sum of 6137 dollars, 82 cents, exclusive of the notes indorsed by this defendant.

1. The defendant now claims, that the sum received by the bank as the avails of the *Whiting* mortgage, shall be applied *pro rata,* upon all the debts due from *Whiting* to the bank, which made up the note of 6137 dollars, 82 cents, including as well the notes for which he is responsible as indorser, as the other claims; and that the same be deducted from the amount now claimed by the *Stamford Bank* to be due upon the defendant's mortgage.

The doctrine of the application of payments upon distinct debts due from the same debtor to the same creditor, has been too frequently discussed and considered, to require a particular examination at this time.

If both the debtor who pays, and the creditor who receives, waive their respective privileges of making an application of the payment upon any one of the separate debts due, it would seem, that neither of them ought to claim a right to demand of the court so to make the application as to advance

the peculiar interest of the one to the injury of the other.
Their rights having been waived, ought not to be revived;
and in such case, we know of no better administration of the
principles of equity, than so to direct the application of the
money paid by the debtor, or received from other sources by
the creditor, as that, under all the circumstances, the greatest
equity shall be done, or the mutual intention of the parties, at
the time of payment, if it can be ascertained, shall be best
carried out.  *Field* v. *Holland*, 6 *Cranch*, 8.  *The United
States* v. *Kirkpatrick*, 9 *Wheat*. 720.  *Cremer* v. *Higginson*,
1 *Mason*, 323.  *Brander* & al. v. *Phillips* & al., 16 *Peters*,
122.  *Newmarch* v. *Clay*, 14 *East*, 239.  *Stone* v. *Seymour*
& al., 15 *Wend*. 19.  *Fairchild* v. *Holley*, 10 *Conn. R.* 176.
And the result of the operation of this principle will be, as it
frequently has been, that in some instances, payments will be
applied upon the *oldest* demands, and sometimes upon the
*most precarious* debts.  But in no case can they be applied,
by the court, where no direction has been given by the debt-
or, to a demand not due when payment is made, if there be
another debt already due.  *Field* v. *Holland*, 6 *Cranch*, 8.
*Brander* v. *Phillips*, 16 *Peters*, 122.

Although the indebtedness of *Whiting* and of *Whiting
& Peck* had all been consolidated, and was embraced in the
note and mortgage of 6137 dollars, 82 cents, yet, as the com-
mittee find, that this was not by way of extinguishment of the
former separate demands, but only an additional security for
them, upon terms too, which *Whiting* had not complied with,
the original debts still existed as if no such consolidation had
been attempted, and the same right of applying payments con-
tinued to both the parties.  This feature in the case is mate-
rial, and constitutes an essential distinction between the pre-
sent and the cases in *Massachusetts*, to which we were re-
ferred, by the defendant, in the argument, and in which there
was no power or opportunity of election.  *Blackstone Bank*
v. *Hill*, 10 *Pick*. 129.  *Lincoln* v. *Bassett*, 23 *Pick*. 154.
*Dalton* v. *The Woburn Agricultural and Mechanic Associa-
tion*, 24 *Pick*. 257.

Some cases from the *English* books were relied upon, by
the defendant, as furnishing authorities for his claim, and es-
pecially the cases of *Bardwell* & al. v. *Lydall*, 7 *Bing*. 489.
(20 *E. C. L.* 213.) and *Raikes* v. *Todd*, 8 *Ad. & El.* 846.

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1843.*

The Stamford
Bank
*v.*
Benedict.

(35 *E. C. L.* 546.)  The first of these cases was *assumpsit* upon a guaranty for 400*l.*  The plaintiff had furnished goods upon it to an amount considerably beyond that sum.  *Mayhew*, for whose benefit it was given, assigned his property for the benefit of all his creditors, and for the payment of his debts *pro rata.*  The plaintiff received a dividend, which he applied to that part of the debt which exceeded the 400*l.*, and now attempted to hold the defendant liable for the whole sum.  But he failed in this; for the court said, the payment was not a payment in gross, but a payment of 8*s.* 7*d.* on the pound, specifically made and received as so much on each and every pound; and this necessarily operated as a part payment of the 400*l.*

The latter case was, in effect, the same, only the person for whom the guaranty was given, had become bankrupt, and his estate paid a dividend of 2*s.* 5*d.* on the pound of the debts proved.  The plaintiff had proved his whole debt; but had applied the dividend to that part of it not covered by the guaranty.  But this was not sustained, by the court, for the same reasons.  It is evident, in both these cases, that the rule of decision was, that the debtor in the first case, and the bankrupt law in the other, had made a specific application of the dividends to every part of the entire debt, as being indivisible; and that the court could only sanction and enforce what had been already done.  The facts here are essentially different.  As we have already seen, the original debts remained distinct and separate, and no application was made of the money received in payment, either by the debtor or by the statute.

If, then, as the defendant supposes, there was no application made by either debtor or creditor, of the avails received by the *Stamford Bank* from its mortgage from *Whiting*, the question is, is the court, by the principles of law or equity before stated and applicable to this case, bound to apply the payment so as to reduce the amount due upon the notes indorsed by this defendant?  What are his peculiar equities, that he should claim to direct the application of payments made and received by other parties?  The debtor and creditor had the sole right of controuling these payments; and if neither of these have done this, the court must do it, as the rights, equities, and intention of these parties seem to de-

mand. The defendant is an indorser, or at most a surety; and this constitutes his only relationship to these debts. It has been said. that sureties are to be favoured in the construction and enforcement of contracts. But we cannot extend such considerations to cases like the present. To do this, would be to defeat the object and end of suretyship; it would be to hold, that the surety might have the money paid by his principal, so applied, as to leave the creditor a loser, notwithstanding his care and vigilance; and in truth, to discharge an indorser, who has been duly charged as such, without the fault or negligence of the creditor. And such would be the effect, in the present case. This would be inequitable; and we cannot direct the application of this money, upon this principle. Indeed, this is a case, in which, if the creditor had made no application of the payment, the court, upon equitable principles, would apply it upon the precarious debts. *Plomer* & al. v. *Long,* 1 *Stark. Ca.* 153. (2 *E. C. L.* 334.)

But the plaintiff here insists, and we think very properly, that the creditor, the bank, when the money was received, correctly exercised its privilege of applying it in payment of such of the debts due to it from *Whiting,* &c., as were not secured by the defendant's indorsement. The court would have done the same.

It was objected here, that this was done only by the cashier of the bank, by verbal directions from the directors, and not by the authority of a corporate vote. Such vote was not necessary. Much of the old strictness and formality required by the common law, on the subject of corporate action, from necessity, as well as upon principles better understood, has been dispensed with, in modern times, and especially in this country of corporations. The agents of corporations must necessarily have some latitude of discretion, and especially agents of such general powers as the cashiers of banking institutions. It is the duty of such cashiers to receive all moneys paid to the banks, and as incidental to this power, to apply them, subject to the supervisory authority of the directors. *Beverley* v. *The Lincoln Gas Light and Coke Company,* 7 *Ad. & El.* 829. (33 *E. C. L.* 222.) *Bank of Columbia* v. *Patterson,* 7 *Cranch,* 299. *Fleckner* v. *Bank of the United States,* 8 *Wheat.* 338. *Osborne* v. *Bank of the United States,* 9 *Wheat.* 738.

2. The defendant still further claims, that, whatsoever may

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1843.*

The Stamford
Bank
*v.*
Benedict.

be his rights in regard to the application of the avails received by the bank from the *Whiting* mortgage, yet by virtue of his position of indorser or surety, he is in equity entitled to participate in the avails of that mortgage, as a common fund for the payment of all the debts secured by it.

That a surety who has paid the debt, and perhaps in some cases, where he has not paid it, may, in the language of the civilians, be subrogated into the place of the creditor, as to all the securities and funds in the hands of such creditor, we admit. This right, however, is not one which can be exercised against the essential interests of the creditor; whose rights, by virtue of the securities or funds in his hands, are paramount, but can be ultimately enforced only against the debtor. If the creditor has been paid, he is to remain paid ; if only secured, he is to remain secured. It is very obvious, in this case, that to enforce the defendant's claim, will be to withhold from the creditor a portion of the joint and legal demand which he has against the defendant, and which the defendant is liable to pay, and to compel him to forego the benefit of the security he has obtained to the extent claimed by the defendant. The bank is now to lose a considerable portion of its claims against *Whiting* and *Whiting & Peck ;* and we are asked to compel it to suffer a still greater loss.

For our views more particularly, on this subject, we refer to our opinion in the case of *Belcher* v. *The Hartford Bank, ante,* 381.

We advise the superior court, that the defendant is entitled to no deduction from the amount due on his mortgage to the *Stamford Bank,* by reason of the avails received by that bank from the *Whiting* mortgage.

In this opinion the other Judges concurred.

Decree for plaintiffs.