**Mutual Construction Company, Appellee, v. Frank L. Baker et al., on appeal of Mary R. Waller, Appellant.**

### Gen. No. 29,747.

1. Mechanics' liens—*when lessor chargeable through agent on lessees' contract for alterations.* Where a son, who was the general agent of the owner of property, was fully aware of what was being done in connection with alterations and repairs before they were undertaken and while they were being done, and was the means of bringing the complainant and the tenant of the building together in negotiations for the contract, the owner was chargeable with all the knowledge the son had, and the owner was held to have "knowingly permitted" her lessees to contract for work done within the meaning of section 1 of the Mechanics' Liens Act, Cahill's St. ch. 82, ¶ 1.

2. Mechanics' liens—*actual scope of agency as affecting owner's chargeability on tenant's contract made with agent's knowledge.*

Mutual Construction Co. v. Baker, 237 Ill. App. 596.

The owner will be held to have knowingly permitted repairs or alterations contracted for by a tenant to be done, where notice or knowledge of such work comes to an agent of the owner and such agent is in general charge of the property, although the agent might not have authority broad enough to permit him to make a contract for the work himself which would be binding on the principal in the absence of specific approval by the latter. The scope of such agent's authority is such that, when notice or knowledge of the work comes to him, it becomes his duty to communicate that knowledge to his principal.

3. MECHANICS' LIENS—*lien liability of lessor on tenant's contract for repairs.* A decree for a mechanic's lien against the owner of a building, for work done under contract with the tenants, was not subject to reversal because the owner's agent advised the contractor that he would have to look to the tenants for his pay; and even if such statement had been made by the owner herself and the work was done, a lien would nevertheless have attached to the owner's interest, provided she knowingly permitted the work to proceed and be done.

4. MECHANICS' LIENS—*when payments by tenants credited on nonlienable items to sustain decree against lessor.* Where a mechanic's lien was sought upon a lump-sum contract, and the master found that certain items might not be lienable, the decree allowing the lien for the balance due was affirmed, where the total, with extras, amounted to over $5,000, and the tenants with whom the contract was made had paid $3,700, and the master found that at most the items which might not be lienable amounted to a few hundred dollars only, and that complainant was entitled to have the amount which the tenants had paid credited in such a way as to pay for these nonlienable items; and as the evidence was such as to make it possible to determine the fact that the nonlienable items amounted to less than the tenants had paid under the contract, complainant was held entitled to a lien for the balance due.

5. PAYMENT—*application of payments by equity.* Equity will credit payments so as to give a creditor the best security for the debt remaining unpaid.

Appeal by defendant from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Affirmed. Opinion filed June 17, 1925. *Certiorari* denied by Supreme Court (making opinion final).

SIDNEY W. WORTHY, for appellant; CHARLES H. CHAPMAN, of counsel.

JOSEPH ROSENBERG, for appellee; BENJAMIN ROSEN-BERG, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

The complainant, Mutual Construction Company, filed a bill to enforce a mechanic's lien against the property of which the defendant, Mary R. Waller, was the owner and Baker and others were the tenants. The chancellor held that the complainant established its right to a lien to the extent of $1,925, and entered a decree to that effect. To reverse that decree Mrs. Waller has perfected this appeal.

Mrs. Waller had owned the premises in question, located at 719 N. Clark street in the City of Chicago, for about forty-five years. She testified that as far as she could remember she had never been to the building, but that her son, J. Alexander Waller, managed it for her. She did not even know whether the building had a basement,—she supposed it did have because such buildings generally did. She further testified that she never knew Baker, the tenant, nor did she know who the tenants were who were occupying the premises in August, 1917; that her son "signed the leases there and collected the rents." She testified that her son never signed any lease without first consulting her and reporting the terms and facts concerning them, and that he never did anything to the building without consulting her.

The testimony shows that Baker had a lease on the premises in question. He had first leased them in 1911 and this original lease was later renewed. This tenant maintained a billiard hall and bar in the premises and it seems that this business did not pay, and in May, 1917, Baker went to see Waller, the agent, and told him that he was going to discontinue the billiard hall and bar and convert the place into a cabaret, and that in that connection he was going to repair and remodel the place. He testified that on

Mutual Construction Co. v. Baker, 237 Ill. App. 596.

that occasion Waller told him that was all right,—to go ahead and do it,—''He just looked at the blueprint and said he thought I would do business if it was fixed up.   *   *   *   He said, 'All right, go ahead and make the change.' ''   At the time Baker undertook to make the change in his business he took in a partner, whose name was Ryan, and the latter accompanied Baker when he went to discuss the matter of the alterations with Waller. Ryan testified that before he entered into his partnership with Baker he took up with Waller the question of getting an extension on the lease; that the then existing lease was for a period of five years, two of which had expired, leaving a balance of three years. Ryan testified that: ''We went up there with our blueprints to Mr. Waller and showed him the blue prints and the work we were going to do at Superior and Clark streets and I told him I could not see where I could go ahead with this $5,000 improvement on a three year lease and wanted two years more.   I told him I was to become a partner and he said, all right, he would give us two years more, and made out a rider and pinned it to the old lease.'' The lease then covering the premises had been executed by Waller, as agent for his mother, and after he had executed the rider, testified to by Ryan, the record shows the work contemplated by the tenants was done.

A witness connected with the complainant company testified that about the time the complainant entered into its contract with the tenants, the latter stated that the complainant had been recommended to them by Waller and after that the witness had a conversation with Waller, who stated that Baker was one of the tenants in the building in question, and he inquired of the witness how the plan was getting along, on the figuring for the work that was to be done, and the witness replied that the figures had been submitted to the tenants.   This witness further testified that Waller asked how they were going to remodel the premises and he told him that they were going to make a large

cabaret room and that the work would be an improvement to the building; that after they had begun the work, and while it was going on, he had another talk with Waller and the latter asked how the complainant was getting on with the work, and the witness stated they were getting on well and "Waller said that he thought the boys would make out all right over there, and I agreed with him." On cross-examination this witness testified that his first conversation with Waller about this work was had sometime in 1917, at which time Waller said he had a tenant in the premises in question whom he had referred to the complainant and he inquired whether the tenant had called the complainant up and what, if anything, the complainant was doing in the matter; that the next conversation occurred about two months later when the witness told Waller that the complainant had submitted figures on the work, together with a sketch, and that later, when the work had been started, Waller again asked how the matter was progressing.

Waller testified that he knew that the work in question was going on but that he did not see it during its construction; that the witness who testified for the complainant asked him about the tenant, and said he thought he was going to do some work for him on these premises, and wanted to know what he, Waller, knew, and he replied, that "he had been a tenant of mine for some time; that I knew nothing about his financial responsibility, except that he paid me the rent and was slow at times, but he would have to take his own responsibility." Waller further testified that: "I told Mrs. Waller, my mother, that they were going to take out the bar and make a restaurant of it. * * * At that time I did not know much of the proposed changes except that they were going to take out the bar." On cross-examination, he testified that he did not know whether he told his mother that the bar was going to be removed before or after it was

done.  He testified that he had made repairs on the building, when they were needed, but never without consulting his mother; that he ordered all the repairs but went to her first before ordering them.

In our opinion, the evidence in this record clearly establishes that the defendant owner "knowingly permitted" her lessees to contract for the work done, within the meaning of section 1 of the Mechanics' Liens Act (Cahill's St. ch. 82, ¶ 1), and that, therefore, her property is subject to lien.  That her son, who was her agent in the management of this property, was not only fully aware of everything that was being done in connection with these alterations and repairs, both before they were undertaken and while they were being done, but that he was the means of bringing the complainant and the tenants together in negotiations which resulted in the contract for the repairs and alterations, is clearly established.  We are further of the opinion that under the evidence Mrs. Waller must be charged with all the knowledge her son had concerning these alterations and repairs.

Counsel for Mrs. Waller contend that she may not be properly charged with the knowledge her son had, because the scope of his authority was not broad enough to authorize him to make a contract for repairs and alterations of this nature, and, therefore, notice to him, that they were going to be made by the tenant, could not bind his mother.  This is not a case where the contractor is seeking to enforce a lien because of the provisions of the Act which give the contractor a lien against the property of an owner, where the contractor has entered into a contract with the owner or with one duly authorized to contract by the owner, but it is a case where the contractor is seeking to enforce a lien under the provision of the statute, to the effect that he may have a lien, where he makes a contract for repairs or alterations with one whom the owner has, "knowingly permitted to contract," for such work.  In our opinion, the agent of the owner

of property may have such an authority in the management of the property as will make any knowledge the agent has, as to repairs or alterations that are about to be made to the premises, or as are being made, chargeable to the owner, although the scope of authority of that agent may not be so broad as to give the agent authority to enter into a contract for that work, which would be binding upon the owner. The owner will be held to have knowingly permitted repairs or alterations contracted for by a tenant to be done, where notice or knowledge of such work comes to an agent of the owner and such agent is in general charge of the property, although the agent might not have authority broad enough to permit him to make a contract for such work himself which would be binding on the principal in the absence of specific approval by the latter. The scope of such an agent's authority is such that, when notice or knowledge of the work comes to him, it becomes his duty to communicate that knowledge to his principal. The court said in *Trentor v. Pothen,* 46 Minn. 298, a case cited by counsel for the appellant, that ''the facts of which the agent had notice must be within the scope of the agency, so that it becomes his duty to act upon them or communicate them to his principal. * * * In other words, the knowledge or notice must come to an agent who has authority to deal in reference to those matters which the knowledge or notice affects.'' The foregoing sentences were quoted with approval in *Jefferson v. Leithauser,* 60 Minn. 251. In the latter case the agent was authorized by the owner to make leases and collect rents, to care for and look after the property generally and look after the interests of his principal, with regard to the property, and it was held that notice to such an agent, that improvements were being made on a building located upon the owner's real estate, was binding on the owner. In the course of the opinion in the case last cited, the court referred to the fact that both parties had cited the case of *Sandberg*

*v. Palm,* 53 Minn. 252, where an agent, whose authority was limited to the sale of real estate, acquired knowledge that a building was being constructed on his principal's land, and it was held that such knowledge could not be imputed to the principal. In the latter case the court said that "to make knowledge of an agent equivalent to knowledge of the owner, his authority must be such that he could bind his principal by consenting to so charge the land," and the court in *Jefferson v. Leithauser,* said that that proposition was "too broadly stated."

That J. Alexander Waller was the general agent of his mother, in the management, care and control of the premises involved in the case at bar, is too clearly established by the evidence in the record to admit of argument. There was nothing done with reference to the care and management of this property that he did not know about and do for her. She paid the taxes annually and paid the insurance premiums but that was all. The property had been hers and her husband's for forty-five years. Mrs. Waller's husband had been dead for thirty-five years, and yet she had never even seen the property, and hardly knew what it consisted of, but she testified that her son managed it for her. Where knowledge comes to such an agent as that, to the effect that improvements and alterations are being contracted for by a tenant, to the extent of over $5,000, he even introducing the contractor to the tenant, under all the circumstances shown in this record, we are of the opinion that such knowledge of the agent must be imputed to the owner, even though he would not have had authority to make a contract for those repairs and alterations, which would have been binding on the owner in the absence of written and specific authority, from the owner, covering the work involved. Counsel for Mrs. Waller, in contending the contrary, has called our attention to a number of cases, among them *McAlear v. New York Life Insurance & Trust Co.,* 177 Ill. App. 339. It is

urged that this court held in that case that improvement of a building is not within the scope of the authority of an agent authorized to rent the premises and collect rents, and that knowledge of such an agent of an improvement upon the principal's property cannot be imputed to the owner, so as to charge such owner with having "knowingly permitted" the improvement, and thereby subjected his property to a mechanic's lien. In our opinion, that case is not authority for such a statement. It was there held that the improvement in question did not, in fact, amount to an improvement of the premises, but consisted of a trade fixture. Furthermore, the contractor in that case sought a lien on the ground that the agent had "authorized and knowingly permitted" the contractor to do the work involved, and all that the decision comes to is that the evidence fails to show that the agent was so authorized.

Counsel for the appellant further contend that the decree appealed from should be reversed because the appellant's agent advised the complainant that the latter would have to look to the tenant for his pay for the work which was to be done by the complainant under its contract with the tenant. Even if such a statement had been made to the contractor by the owner herself and the work in question was done, the lien would, nevertheless, attach to the owner's interest in the property, provided she knowingly permitted it to proceed and be done. *Loeff v. Meyer*, 209 Ill. App. 382.

It is further contended that the contract in connection with which complainant seeks a lien was a lump-sum contract and that inasmuch as the master found that certain items claimed by the complainant might not be lienable, no lien may properly be given for any part of the work. In support of this contention, *Cronin v. Tatge*, 281 Ill. 336, is cited. In that case there was a lump-sum contract for work for part of which only a lien could be attached, and the court

pointed out that, under the evidence, it could not be ascertained what part of the entire contract price was for the nonlienable part of the contract and what for the remainder. It was further held that a lien could not be enforced for any part of the work done under the contract. In that case it does not appear that any payments had been made under the contract, but the contractor was seeking a lien for an amount equal to the full amount due under the contract. That is not the situation presented in the case at bar. The amount called for by the original contract in this case, together with certain extras thereafter ordered and done, was $5,656.15. The tenant with whom the complainant made the contract had paid a total of $3,700 for the work done, leaving a balance due of less than $2,000. The master found that at most the items which might not be lienable amounted to a few hundred dollars only, and that the complainant was entitled to have the amount which the tenants had paid under the contract credited in such a way as to pay for those nonlienable items, and that the complainant was entitled to a lien for the balance due under the contract. While the master's report does not specify just what the total amount of the nonlienable items was, it is quite clear that it was considerably under $3,700. The evidence in this record being such as to make it possible to determine the fact that the nonlienable items amounted to less than the amounts the tenants had paid under the contract, we are of the opinion that the complainant is entitled to a lien for the balance due. It is a general principle that equity will credit payments so as to give a creditor the best security for the debt remaining unpaid. *Monson v. Meyer,* 190 Ill. 105; *Barbee v. Morris,* 221 Ill. 382.

For the reasons stated the decree of the superior court is affirmed.

*Affirmed.*

O'CONNOR, P. J., and TAYLOR, J., concur.