FORD BROTHERS, INCORPORATED, *vs.* THE FREDERICK M. WARD COMPANY ET AL.

Third Judicial District, New Haven, January Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

The presumption that the entry of payments generally as credits upon an open, running account indicates an intention upon the part of the creditor to apply them to the earliest items, is not an artificial or arbitrary principle, and has no application where there is evidence of a contrary intent or where there are circumstances rendering such procedure unjust or inequitable.

Ford Brothers, Inc. *v.* Ward Co.

If the intrinsic justice and equity of the case so require, the court will apply the payments to that debt which has the most precarious or inferior security.

In the absence of any agreement that a note given by the owner of a building to one furnishing materials therefor is to operate as payment of the indebtedness, it will not have that result nor will it affect the right of the materialman to file a lien therefor.

When the desired corrections of a finding necessitate a consideration of only a relatively small portion of the evidence, an appellant should pursue the method provided by §§5828 to 5831 of the General Statutes; but if he prefers, as is his undoubted right, to proceed under § 5832, he should make every effort to prevent unnecessary labor and expense by extensive resort to that portion of the statute authorizing the exclusion from the record of "any portion of the stenographer's minutes which the parties in the case shall agree in writing is not necessary to be printed, or which the court shall direct not to be printed."

During the construction of two dwelling-houses, the plaintiff furnished to the then owners nearly all the lumber used in the second and a substantial part of that used in the first. The total amount kept on an open, running account was $2,553, but no separation was made of the items for each house. The plaintiff was paid $1,600 cash, which was realized by the owners, in part, from a mortgage loan upon, and, in part, from the sale of, the second house; and the plaintiff was also given a note intended to cover the balance due, but which was erroneously made out in the sum of $553 instead of $953. No direction was given by the owners as to the application of the cash and note and the plaintiff credited them, on its books, generally upon the account; but it made a notation upon the back of the note referring to the first house. The plaintiff later filed a mechanic's lien for the unpaid balance against the first house and, having received from a subsequent purchaser a bond in substitution of the lien, brought the present action upon it. Upon the trial the plaintiff was able to prove that the value of the materials furnished for the first house was $588; and it further appeared that if the method of applying the payments against the earliest items on the account was adopted, the balance due upon the first house would be only $99. *Held:*

1. That the notation made by the plaintiff upon the note, viewed in the light of its subsequent conduct and the surrounding circumstances, evinced an intention to apply it to the debt due upon the first house and to apply the prior cash payments to the items relating to the second house; and that the plaintiff was therefore entitled to have this application made and to recover judgment upon the bond for the entire balance due upon the first house.

2. That, even in the absence of such an intention, *it would seem* that a similar application should be made upon general principles of justice and equity for, otherwise, the plaintiff would be relegated to a doubtful and inferior security in the collection of its debt.

Argued January 19th—decided February 28th, 1928.

ACTION upon a bond given in substitution for a mechanic's lien, brought to the Court of Common Pleas for New Haven County and tried to the court, *Booth, J.;* judgment for the plaintiff for $109 only, from which it appealed. *Error; cause remanded with direction.*

*Walter P. Judson,* for the appellant (plaintiff).

*George W. Crawford,* for the appellee (defendant).

HINMAN, J.  In 1925 Ercolano and Iaccarino built two dwelling-houses on two separate lots of land in East Haven, one known as numbers 88-90 Boston Avenue, and herein referred to as house number one, the other 84-86 Boston Avenue, referred to as house number two.  The plaintiff furnished nearly all of the lumber for house number two and a substantial part of that for number one.  No separate record or account was kept by the plaintiff of the items furnished for each house, but, instead, an open, running account for all the materials furnished for both houses.  Ercolano and Iaccarino made three cash payments on this account, the first two, $400 and $500, being part of the proceeds of a first mortgage on house number two, and the third, $700, part of the proceeds of a sale of this house.  The third payment was made on August 10th, 1925, and on the same date they gave the plaintiff a sixty day note for $553.58.  Ercolano and Iaccarino at no time gave any directions as to the application of the payments, and the plaintiff credited them and the note, on its books, generally upon the account.  Upon receipt

of the note, however, the president and treasurer of the plaintiff company marked upon the back of the note "88-90N. house." The note was intended by the parties to cover the entire balance due upon the total account but, through an error of the plaintiff's bookkeeper, was drawn for $553.58 only, although the correct amount of the balance was $953.58. The plaintiff still owns the note and it has not been paid.

On August 22d, 1925, the plaintiff filed for record a mechanic's lien against house number one, claiming $953.58 as due for materials furnished in its construction. On or about April 26th, 1926, The Frederick M. Ward Company, the defendant herein, became the owner of the premises by redeeming under the foreclosure of a mortgage prior to one, subsequent to the lien, under which it was trustee, and thereafter procured the substitution, for the lien, of the bond now in suit. It was determined, from evidence submitted on the trial as to the identity of the materials delivered for the two houses, respectively, that of the entire amount of materials furnished by the plaintiff for both houses, $2,553.58, materials of the value of $588.34 were furnished for house number one.

The foregoing facts, found by the trial court, are not questioned on appeal. It was further found, however, that the plaintiff at no time made application of the payments to any particular item or items, or to the charges for materials furnished for one of the houses as distinguished from the other, and the conclusion was reached that the successive payments should be applied to the items of debit, commencing with the earliest, in the order of time in which they stand in the account, also that there are no controlling circumstances which render this procedure unjust or inequitable to the plaintiff. These credits being so applied, the balance due on account of house number one was found to

be $99.41, and this amount, with interest, was awarded to the plaintiff. This finding of fact and the conclusions from the subordinate facts are attacked upon this appeal.

The plaintiff seeks to substitute, for the above-mentioned finding as to lack of application by the plaintiff, a finding that the note for $553.58 was so received and applied that it was to have been credited, when paid, on account of materials furnished for house number one. The success of this endeavor depends upon the effect, if any, to be given to the facts that, as the trial court finds, the cash payments were made from moneys derived from house number two, the indorsement, referring to house number one, made by the plaintiff upon the note, and the filing of the lien upon the latter premises for the full amount of the balance of account, including the amount of the note.

We are unable to construe the making of the memorandum upon the back of the note other than as evincing an intention on the part of the plaintiff to apply the same on account of house number one. No other motive for or object of such a notation appears from the record or is suggested. It is clearly inferable that, at the time, the plaintiff knew that its debtors had parted with all their interest in house number two. Due to a mathematical error, the plaintiff was under the impression that the balance remaining unpaid on the account was a sum which, as subsequently developed, approximated the value of materials furnished for house number one. It would be quite natural, then, that plaintiff should regard the note as covering indebtedness referable to the latter premises. Between August 10th and August 21st plaintiff apparently discovered that the unpaid balance was larger by $400 than the amount of the note, and had it supposed that part of this balance pertained to house

number two it, so far as appears, could still have secured such part by lien thereon, instead of attempting, as it did, to secure the entire amount upon the other house. It is evident that it was not until a separation of the charges was accomplished through the taking of much testimony on the trial, that it developed that most of the excess of the balance above the amount of the note was referable to house number two. It is a reasonable inference, from these facts and circumstances, that the plaintiff's action in making the memorandum on the note, coupled with its subsequent conduct, manifested an intention to apply the note to the charges pertaining to house number one and, consequentially, to apply the prior cash payments to the items relating to house number two. Indeed, we think that such an inference is the only one which can fairly be regarded as consistent with the other facts. We are, therefore, justified in granting a correction of the finding to that effect. *Davis* v. *Margolis, ante,* 417, 140 Atl. 823.

This alteration is destructive of the conclusion, stated above, that the payments should be applied chronologically, as a result of which process the amount of the judgment, as rendered, was arrived at. While, in the absence of a contrary intention and of any other controlling circumstances, the law presumes that the entry of payments generally as credits upon an open, running account indicates an intention of the creditor to apply the payments to the earliest items, the rule is not an artificial or arbitrary principle, but one founded merely on the presumed intention of the parties, and is applicable only when there is no evidence to show a contrary intention. *American Woolen Co.* v. *Maaget,* 86 Conn. 234, 247, 85 Atl. 583, and cases cited. When there is such evidence, the application will be made in accordance with the intent so mani-

fested.   The conclusion, here, as to such application should be in accordance with the intention above stated in the correction which we make in the finding.

The right of application of payments extends up to the time when the controversy arises. *American Woolen Co.* v. *Maaget, supra,* p. 245.   The plaintiff's right to obtain security by lien and to enforce payment thereunder was not lost or affected by the taking of the note.   It was payable at future date, there is no pleading, finding or indication of an agreement that it was to be considered as payment, and, of itself, it was not such. *Burritt Co.* v. *Negry,* 81 Conn. 502, 508, 71 Atl. 570; *Hopkins* v. *Forrester,* 39 Conn. 351.

The trial court not only held that there was no direction or intention of the parties to apply the payments otherwise than to the earliest items of the account, but also that there were no "other controlling circumstances which render this procedure unjust or inequitable to the plaintiff."   The change which we have made in the finding is decisive of the outcome, but even had evidence of an intention to make application otherwise than in the order of time been lacking, the same result to which we come, could and should have been arrived at by resort to the equities involved.

"Whatever doubt there may have been, or may now be, as to the application of indefinite payments, where no application has been made by either party, whether the supposed interests of the party paying or the party receiving are to be preferred, it has at no time been doubted that the application must be made according to the justice of the case. . . . If both omit to make the application, the law . . . 'will apply the payments according to its own notions of justice.'   Indeed, the proposition, that an unjust application of them cannot be tolerated or allowed, is obviously self-

evident, as a maxim in morals as well as of law."
*Chester* v. *Wheelwright,* 15 Conn. 562-567. The court
will make the application in accordance with "the in-
trinsic equity and justice of the case." *American
Woolen Co.* v. *Maaget, supra,* p. 246, and cases cited.
One of the recognized doctrines applicable in the pro-
cess is that the courts will apply payments to the debt
which has the most precarious or inferior security.
*Chester* v. *Wheelwright, supra,* p. 567; *Stamford Bank*
v. *Benedict,* 15 Conn. 437, 445. The law will apply
a general payment to the debt for which the creditor
has the worse security, leaving that for which he has
the better security unpaid. *Fairchild* v. *Holly,* 10
Conn. 174, 180. In *Stamford Bank* v. *Benedict, supra,*
it is stated (p. 445) that if the creditor, the bank, when
money was received on account of debtor's notes held
by it, had not applied it in payment of such of these
debts as were not secured by defendant's indorsement,
the court would have done so. In *Mutual Construction
Co.* v. *Baker* (1925) 237 Ill. App. 596, 605, the court,
applying "the general principle that equity will credit
payments so as to give a creditor the best security for
the debt remaining unpaid," held, on a bill to enforce
a mechanic's lien, that the lienor was entitled to have
payments made on the amount due for work done
credited in such a way as to pay for nonlienable items.
In *Wardlaw* v. *Troy Oil Mill,* 74 S.C. 368, 54 S.E. 658,
114 A.S.R. 1004, a manufacturer furnished brick to
the defendant to be used in the erection of its mill,
but a considerable portion were not so used but were
sold. A partial payment was made and was credited
on the general account; subsequently the brick com-
pany filed a mechanic's lien for the balance. It was
held that the lien was valid only for the bricks used in
the construction of the mill, but that credit for the
payment should be applied to the items not secured by

the lien.   The facts in the foregoing two cases bear the closest analogy to those before us of any which have come to our notice.    Among the many other cases affirming the same principle are: *Barber County Comrs.* v. *Lake State Bank* (1926) 121 Kan. 223, 246 Pac. 524; *State* v. *United States F. & G. Co.,* 81 Kan. 660, 106 Pac. 1040; *Kansas City S. & T. Roofing Co.* v. *Poe,* 138 Md. 513, 114 Atl. 710; *In re Craig Lumber Co.* (1921) 269 Fed. 755; *Field* v. *Holland,* 10 U. S. (6 Cranch) 8, 3 L. Ed. 136; *Barbee* v. *Morris,* 221 Ill. 382, 77 N.E. 589; *Smith* v. *Lewiston Steam Mill,* 66 N. H. 613, 34 Atl. 153; *Jeffers* v. *Pease,* 74 Vt. 215, 52 Atl. 422; *Atkins* v. *Atkins,* 71 Vt. 422, 45 Atl. 1037; *Crompton* v. *Pratt,* 105 Mass. 255.   See also 21 R.C.L. p. 97 *et seq.;* 30 Cyc. pp. 1240, 1246, 1248.

In this case, if there had been no intention manifested by the plaintiff as to application of the payments, and it devolved upon the court to apply them, what would the "intrinsic equity and justice of the case" require?   At the time of the trial the original debtors, Ercolano and Iaccarino, had long since parted, by sale, with all interest in house number two and plaintiff had no lien or unexpired right of lien thereon; they had been deprived, by foreclosure, of their interest in house number one, and the defendant had taken title thereto with full notice of the existence and amount of plaintiff's lien thereon.   The cash payments were all made out of funds derived from house number two.

The result of the trial court's adjudication is that the cash payments are applied to items furnished for house number one, and so secured by plaintiff's lien, to such an extent that only $99.41 remains secured thereby, instead of $588.34, the value of the materials furnished for the liened premises, while the amount unpaid which is referable to house number two, as to

which plaintiff has only an apparently valueless right of resort to the original debtors, is increased from $365.24 to $862.17.

On the other hand, if application of the cash payments is made, *pro tanto,* to the unsecured items chargeable against house number two from which the funds therefor were derived, the plaintiff's unsecured debt and potential loss will be only $365.24, and it will recover from the defendant no more than the value of the materials actually furnished for house number one and which plaintiff was entitled to secure by lien ($588.34) and the defendant is required to pay no more than that just value, with interest, and much less than the amount ($953.58) of the lien, subject to which it acquired the property and by its bond undertook to pay the amount secured thereby.

It seems that, as between these alternatives, there could be little question that the dictates of justice and equity would indicate, unmistakably, the latter. However, we reach the same result through correction of the finding,—the method principally urged and argued before us.

As to the claimed error in excluding the testimony of one Koerber, it is sufficient to say that the purpose now advanced,—to show knowledge of Ercolano as to application of the payments—was not stated with sufficient definiteness, in the claims made on the trial, to render the ruling erroneous.

The defendant alleged in its answer that the lien overstates the amount of materials furnished for the liened premises and the sum due therefor, and purports and attempts to secure the plaintiff for materials not furnished for these premises, and is therefore void. The court ruled, however, that the plaintiff's lien secured, and it was entitled to secure, such portion of the unpaid balance as represents materials furnished

for the liened premises, less the payments held to be applicable thereto.   The defendant might have obtained a review of this adverse ruling by appeal, or by bill of exceptions under §5839 of the General Statutes, but in the absence of either the question is not before us, and appellee's brief and argument on that point may not be considered.

The appellant elected to pursue the method to correct the finding prescribed by §5832 of the General Statutes and, accordingly, filed with the clerk a certified copy of all the evidence and rulings, with a motion that the same be made part of the record, and the trial court so ordered.   The bulk of the evidence printed in consequence relates solely to the identification and separation of the several items of materials sold and delivered by the plaintiff to Ercolano and Iaccarino, as having been furnished for house number one and house number two, respectively, and the total value of such materials so furnished for each house. No attempt was made to correct that portion of the finding, paragraph ten, which determined these respective amounts.   Considerable colloquies pertaining to rulings on evidence are also included although the only ruling made a ground of appeal is sufficiently set forth in the finding—Subdivision III. The result is that by far the greater portion of the evidence and rulings so printed affords no assistance in the determination of the questions presented by the appeal and serves no useful purpose, while its inclusion involved much unnecessary labor and expense in the preparation and printing of the record and requires this court to winnow out the relatively small portions which are relevant to its inquiries.

Considering the nature and extent of the corrections sought, it would seem that appellant should have adopted the method provided in §§5828, 5829, 5830,

Ford Brothers, Inc. *v.* Ward Co.

and 5831 of the General Statutes, which involves the printing of such evidence only as is material to the corrections desired. As it preferred, as was its undoubted right, to proceed under §5832, the situation presented a conspicuously apt occasion for extensive resort to the provision of that section that there need not be printed "any portion of the stenographer's minutes which the parties in the case shall agree in writing is not necessary to be printed, or which the court shall direct not to be printed."

On the same date that the appeal was filed the parties stipulated to dispense with the printing of certain exhibits. The scope of the appeal was then known to both, and it would seem that a further like agreement as to evidence not material to the corrections sought might readily have been reached and a very considerable abbreviation of the record thereby effected.

We commend this salutary provision of the statute to more general attention and more extended use, for the reason that frequently, as in the present instance, fitting opportunity for resort to it is not fully availed of.

There is error, the judgment is set aside and the Court of Common Pleas directed to render its judgment in favor of the plaintiff for $588.34, with interest from August 10th, 1925.

In this opinion the other judges concurred.