**In the Matter of CENTURY BRASS PRODUCTS, INC., Debtor.**

**BANK OF BOSTON CONNECTICUT, Movant,**

**v.**

**CENTURY BRASS PRODUCTS, INC., Respondent.**

**Bankruptcy No. 2–85–00197.
Motion No. 2–87–0250M.**

United States Bankruptcy Court,
D. Connecticut.

Feb. 21, 1989.

Francis G. Pennarola, Gager, Henry & Narkis, Danbury, Conn., for movant.

Robert A. White, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for debtor.

propriate where a creditor willfully violates the automatic stay.

Thomas Weber, Weil, Gotshal & Manges, New York City, for General Elec. Capital Corp., creditor.

## MEMORANDUM OF DECISION ON MOTION OF BANK OF BOSTON CONNECTICUT FOR RELIEF FROM AUTOMATIC STAY

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The principal issue presented in this proceeding is the right of a bank, two and one-half years after the filing of a bankruptcy petition (petition), to select against which of two pre-petition obligations of the debtor the bank may set off funds on deposit in the debtor's bank accounts on the petition date. A further question is whether the bank should credit appropriate interest to these funds from the date of the petition to the date of setoff. The appearing parties have submitted the matter to the court on briefs only, with no evidentiary hearing requested.[1]

### II.

On March 15, 1985, the date of the filing of its chapter 11 petition, Century Brass Products, Inc. (the debtor) owed approximately $4,600,000.00 to Bank of Boston Connecticut (the bank). The debtor had incurred the debt prior to 1980 and secured it with mortgages on various parcels of its realty (mortgage debt). The bank, in 1983, had also loaned the debtor $620,000.00 with the debt secured by a junior position on the debtor's continuous casting machine (machine debt). General Electric Capital Corporation (GECC) held the first lien on the machine and a junior lien on the debtor's realty. The promissory notes signed by the debtor to evidence the machine debt provided:

The Undersigned hereby grants to the Bank a lien and right of set-off for all of the Undersigned's liabilities hereunder, upon and against all of the Undersigned's deposits, credits and other property now or hereafter in the possession or control of the Bank or in transit to it. The Bank may at any time apply the same or any part thereof to any of the Undersigned's liabilities whether or not matured at the time of such application.

The debtor and the bank agree that the debtor, on or about the petition date, had funds totaling $104,882.79 on deposit at the bank.

The bank took no apparent action to assert the setoff of the bank accounts until November 5, 1987, when it filed its motion requesting relief from the stay imposed by 11 U.S.C. § 362(a)(7) (a bankruptcy petition operates as a stay to the setoff of any pre-petition debt owed to the debtor against a claim against the debtor). The debtor had never requested the bank to turn over to it the funds in these accounts. In the intervening years, the bank's mortgage debt has remained fully secured. The court, however, in July 1986, had approved the sale of the continuous casting machine, and insufficient sums were realized to satisfy any portion of the debtor's machine debt. The court, following the sale, had also refused the bank's request to require GECC, as the holder of a prior lien on the machine, to marshall assets—a ruling subsequently affirmed by the district court upon the bank's appeal. *Century Brass Prod. v. Colonial Bank (In re Century Brass Prod.)*, 95 B.R. 277 (D.Conn.1989).

The bank's relief from stay motion requested: (1) "an order granting relief from [the] automatic stay ...", and (2) "an order authorizing [the bank] to off set the funds on hand against the indebtedness owed to it arising out of the [machine debt]". The motion alleged that, with interest, this debt amounted to $639,870.14 as of March 15, 1985. The debtor, on December 8, 1987, filed a response to the motion agreeing to the entry of an order for relief from stay, provided that the order require the setoff be applied to the mortgage debt, and interest calculated at 10% *per annum* from the

---

**1.** There is no disagreement among the parties as to the facts stated herein and the documents referred to in this memorandum were, with the exception of the proof of claim, attached as exhibits to the bank's moving papers.

date of the petition be added to the funds on deposit. GECC appeared in support of the debtor's response. The debtor, together with the unsecured creditors' committee, GECC and several other major creditors, consented to the entry of a court order on December 18, 1987 modifying the automatic stay to permit the bank "to offset against the funds on hand amounting to $104,882.79"[2] The consented-to order reserved for further order of the court the issues "as to which indebtedness against which the funds should be offset, and whether Bank of Boston Connecticut should credit interest to the funds." The parties subsequently requested the court to delay rendering its ruling. On January 26, 1989, the debtor notified the court that all parties agree that the remaining issues are now ripe for decision.

### III.

The debtor concedes in its brief that the bank has a right of setoff against either loan. The debtor contends that because the bank did not effect a setoff before the onset of the present controversy, it is now subject to the rule that an undesignated payment from a debtor is to be applied to the older debt—in this case, the mortgage debt. *American Woolen Co. v. Maaget,* 86 Conn. 234, 243–45, 85 A. 583 (1912). GECC argues that the rule that a debtor has the right at the time of payment to direct its application to any debt that the debtor owes to the creditor applies to the present circumstances. *See id.* In this case, "the time of payment", according to GECC, would be the debtor's consent to the order lifting the automatic stay, in which the debtor requested the funds be applied to the mortgage debt.

The bank relies on the express provisions in the machine-debt note granting it the right to set off the debtor's bank deposits against any of the debtor's liabilities to it and on the doctrine that undesignated pay-

ments must be applied "to the debt which has the most precarious or inferior security." *Ford Bros., Inc. v. Ward Co.,* 107 Conn. 425, 432, 140 A. 754 (1928).

### IV.

The Bankruptcy Code (Code) provides, with exceptions not relevant here, that the Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C. § 553(a).

The legislative history to § 553 states that § 553 "preserves, with some changes, the right of setoff in bankruptcy cases now found in § 68 of the Bankruptcy Act." H.R.Rep. No. 595, 95th Cong., 1st Sess. 377 (1977), *reprinted in* 1978 *U.S. Code Cong. & Admin.News* 5963, 6333. While it was generally held under the Act that federal law governed issues arising under § 68, when "the situation is one that § 68 does not prescribe for or regulate, ... the courts apply the law of a state in connection with matters of substantive law relating to the asserted right of set-off—as, for example, the imputation of payments on a plurality of obligations held by a creditor." 4 J. Moore, *Collier On Bankruptcy* ¶ 68.06 at 886.1 (14th ed. 1978) (footnotes omitted).

In the second circuit, the court of appeals has consistently and strongly supported a creditor's right of setoff in bankruptcy. *Scherling v. Chase Manhattan Bank (In re Tilston Roberts Corp.),* 75 B.R. 76, 79 (S.D.N.Y.1987). In *In re Applied Logic Corp.,* 576 F.2d 952, 957 (2d Cir.1978), the court acknowledged that while one of the "dominant impulses in bankruptcy is equality among creditors" and that with setoff "the dominant impulse ... is inequality among creditors", the right of setoff will prevail. "The rule allowing setoff, both

---

**2.** The consent by the debtor and the involved creditors to the entry of this order may well have been improvident. The proof of claim filed by the bank on July 11, 1985, and examined by the court *sua sponte,* stated that neither the mortgage debt nor the machine debt was subject to setoff or counterclaim. In such an instance, the law may find waiver of the right of setoff. *See In re Britton,* 83 B.R. 914, 919–20 (Bankr.E.D.N.C.1988); 4 L. King, *Collier On Bankruptcy* ¶ 553.07 (15th ed. 1988).

before and after bankruptcy, is not one that courts are free to ignore when they think application would be 'unjust'. It is a rule that has been embodied in every bankruptcy act the nation has had, and creditors, particularly banks, have long acted in reliance upon it." *In re Applied Logic Corp.*, 576 F.2d at 957–58 (footnotes omitted); *see also In re Bohack Corp.*, 599 F.2d 1160, 1164–65 (2d Cir.1979) (The right of setoff "has the effect of paying one creditor more than another", but despite this inevitable effect, the doctrine of setoff "has long occupied a favored position in our history of jurisprudence.").

 I conclude that a Connecticut court based either upon the language contained in the machine-debt notes or upon the other circumstances hereinbefore described would permit the bank to apply the debtor's payment received by way of setoff to the unsecured machine debt rather than require the bank to apply the setoff against the earlier mortgage debt where setoff against the mortgage debt would have absolutely no benefit to the bank. *Ford Bros., Inc. v. Ward Co.*, 107 Conn. at 432, 140 A. 754; *cf. Sullivan v. Merchants Nat'l Bank*, 108 Conn. 497, 503, 144 A. 34 (1928) (The equities of a creditor with a right of setoff against an insolvent party are superior to the equities of the general creditors of the insolvent party).

The unexplained two-and-one-half-year delay between the filing of the petition and the filing of the bank's motion for relief from stay cuts both ways in considering the equities of the parties. "The mere passage of time, however, will generally not constitute a waiver of setoff absent some inequitable conduct by the creditor or prejudice accruing to the debtor." L. King, 4 *Collier On Bankruptcy* ¶ 553.07 at 553–34 (15th ed. 1988) (footnotes omitted). The debtor, as well as the bank, could have at any time during this period applied to the court for an order dealing with the bank accounts, and the record presented demonstrates neither inequitable conduct by the bank nor prejudice to the debtor.

## V.

The debtor's request that the court order the bank to credit the funds on deposit with interest from the date of the petition has merit. The bank had possession of these funds for over two and one-half years. Making the bank responsible for interest is equitable, notwithstanding the failure of the debtor to act. *Cf. In re Inslaw, Inc.*, 81 B.R. 169, 170 (Bankr.D.D. C.1987). The debtor has requested interest at the rate of 10% *per annum*, but I find that the interest rate should be that which the bank paid on regular saving accounts during the period from March 15, 1985 to the date of setoff. It is

SO ORDERED.